THE FARMERS' LOAN AND TRUST COMPANY, *appellants,* vs.
HIRAM WALWORTH, clerk in chancery, *respondent.*

Where moneys deposited in the court of chancery, in a suit for the partition of
lands, have been invested by the clerk upon bond and mortgage executed to him
in his official character, such clerk has no power to discharge the mortgage with-
out the order of the court.

And it seems, that where the clerk executes such a discharge without actual pay-
ment, and without the order of the court, it is void even as against *bona fide* pur-
chasers of the property encumbered by the mortgage.

But the unauthorized act of the clerk, in executing such discharge, may be ratified
by the owners of the fund secured by the mortgage.

A ratification of part of an unauthorized transaction of an agent, or one who assumes
to act as such, is a confirmation of the whole.

One of the clerks in chancery loaned upon bond and mortgage the sum of $29,000,
which had been paid into that court to secure a widow's dower, in pursuance of a
decree in partition. Afterwards, the borrowers executed to the clerk another bond
for the same sum, and another mortgage upon *different* property. These securi-
ties were intended as a substitute for the first bond and mortgage, and were so
received by the clerk, who, thereupon, without any direction of the court, execu-
ted a satisfaction of the first mortgage, which was entered of record. The owners
of the fund, (after the death of the widow,) with notice of all the circumstances,

The Farmers' Loan and Trust Co. *v.* Walworth.

foreclosed the second mortgage, in the name of the clerk, and had the property sold *Held,* that although the discharge of the first mortgage was void, and might have been treated as a nullity, yet the election of the owners of the fund to proceed upon the substituted security, was a ratification of the acts of the clerk, and therefore, that a bill filed to foreclose the first mortgage, for the purpose of collecting the residue of the money not realized by the first foreclosure, could not be sustained.

It seems, that if the owners of the fund had elected to proceed upon the first mortgage, the appellants, who were *bona fide* purchasers of the property covered thereby, would have been entitled to the second mortgage for their indemnity.

The act of a public officer exceeding the authority conferred on him by law may be adopted by the party for whose benefit it is done. *Per* BRONSON, J.

The equitable doctrine in regard to marshalling securities is applicable only where one party has a lien upon or interest in two funds, with a right to resort to either or both, and another party has a lien upon or interest in only one of those funds. *Per* GARDINER, J.

APPEAL from chancery. The bill in this cause was filed against Samuel Jones, John L. Graham, and The Farmers' Loan and Trust Company, to foreclose a mortgage bearing date the 4th day of April, 1835, executed by Jones and Graham to John Walworth, as clerk in chancery for the first circuit. The Farmers' Loan and Trust Company defended the bill, and the case, upon pleadings and proofs, was in substance as follows.

On the said 4th day of April, 1835, John Walworth, as such clerk, loaned to Jones and Graham the sum of $29,000, payable on the 4th of April, 1838, with annual interest; to secure which they executed their bond and the mortgage in question, covering eighty-eight lots in the twelfth ward of the city of New-York. The money so loaned had been previously paid into the court of chancery, in pursuance of a decree of that court made in a suit for the partition of the real estate of Henry A. Coster, deceased; the widow of said Coster (Mrs. Hosack) being entitled to the interest during her life, as a part of her dower, and his heirs and their assigns being entitled to the money, after her decease. She died in July, 1841, and the suit was instituted by the persons who became the owners of the fund upon her decease, under the direction of the court of

chancery, in the name of Hiram Walworth, the successor in office of John Walworth.

On the 31st day of December, 1836, Jones and Graham, the mortgagors, conveyed the premises covered by the mortgage, and other lands, to The Farmers' Loan and Trust Company, for the consideration of $200,000, payable in certain certificates to be issued by that company, of which $125,000 was paid at the time, and $75,000 was to be retained until Jones and Graham should pay off and discharge the mortgage above mentioned, and such other liens as encumbered the premises conveyed. This conveyance was recorded April 6, 1837. On the 12th day of April, 1837, Jones and Graham executed to the said clerk a new bond for the same sum of $29,000, and a new mortgage upon other real estate situated in a different part of the city. These were intended as a substitute for the previous bond and mortgage, and were so accepted by the clerk, who thereupon executed a satisfaction of the first mortgage, which was duly entered of record. A certificate of such satisfaction was exhibited to The Farmers' Loan and Trust Company, and the company afterwards issued to Jones and Graham certificates for the remaining sum of $75,000. The last mortgage was substituted for the first, and the first one satisfied by the clerk, without the direction or authority of the court of chancery; but these acts were done in good faith, and with no improper design on the part of any of those concerned in them. The unencumbered property included in the last mortgage was estimated, by competent appraisers to be of sufficient value to render the debt amply secure; and the evidence tended to show that, at the sale thereof in 1842, (hereafter mentioned,) it produced as large a sum as the property embraced in the first mortgage could have been sold for. The property embraced in both mortgages had then greatly depreciated since the mortgages were respectively executed.

On the 2d of May, 1842, (Mrs. Hosack having died,) the complainants in interest in the present suit, the owners of the fund loaned to Jones and Graham, filed their bill in the name of the clerk to foreclose the last mortgage, and on the 5th of October,

1842, obtained the usual decree of foreclosure, and for the sale of the premises. The Farmers' Loan and Trust Company were not made parties to that foreclosure. Under that decree the premises covered by the last mortgage were sold for the sum of $21,960, on the 7th day of November, 1842, leaving a deficiency of $15,578,49, which amount still remains due; and for the purpose of making that sum, the present suit was instituted to foreclose the first mortgage.

At the time the previous suit was instituted to foreclose the last mortgage, it was known to the solicitor of the complainants in interest therein, that the last mortgage had been substituted for the first, and that the first one had been discharged by the clerk; but it being also known to him that the clerk had executed the discharge without actual payment, and without the direction of the court, it was his intention to fall back upon the first mortgage, in case the foreclosure of the last did not produce enough to satisfy the debt. Jones and Graham, the mortgagors, were in affluent circumstances when the mortgages were respectively executed, but at the time of the foreclosure suit upon the last mortgage, they had become insolvent, and that fact was also known to the solicitor. The same solicitor also testified in the present suit, that from the fact of the insolvency of the mortgagors, he took it for granted at the time he instituted the suit to foreclose the last mortgage, that they had parted with the property included in the first mortgage, but who had acquired the title to the same, he had never inquired.

The assistant vice chancellor of the first circuit made a decree, declaring that the discharge executed by the clerk, of the first mortgage, was void, that such mortgage was still in force, and granting the prayer of the bill for foreclosure and a sale of the premises. The Farmers' Loan and Trust Company appealed to the chancellor, and the cause then became vested in the supreme court organized under the new constitution, where the decree was affirmed. The Farmers' Loan and Trust Company appealed to this court.

*Wm. Curtis Noyes,* for the appellants. I. The clerk in chancery was the trustee or agent appointed by statute to invest, manage, control and collect the fund loaned to Jones and Graham upon their bond and mortgage of April 4th, 1835. (2 *R. S.* 169, §§ 8, 9 ; 1 *id.* 119, § 24, *sub.* 4 ; 2 *id.* 170, § 11 ; *id.* 171, §§ 18, 21, 22 ; *id.* 172, §§ 24, 25.) And having authority to receive payment, he had, as a necessary consequence, power to acknowledge satisfaction.

II. The 70th section of the act concerning the partition of lands, (2 *R. S.* 328, § 70,) does not apply to the partition of lands in the court of chancery, for although a like power is conferred upon that court, yet the 80th section does not declare all the provisions of the act applicable to that court, and the language of the 70th section does not, in terms, embrace the register in chancery. Besides, the statute was not necessary to confer jurisdiction, in partition, upon the court of chancery. This has been for a long period an acknowledged head of equity jurisdiction, independent of any statute. (*Allnat on Partition,* 77, 83.)

III. In any event, the only defect in the discharge of the mortgage, was the want of the order of the court authorizing it. And on this point it is submitted on behalf of the appellants, that there was nothing, either in the law or the facts of the case, to charge them with notice of the omission. On the contrary, they acted with entire good faith, relying upon the accuracy and integrity of a public officer ; and they had a right to believe, as they undoubtedly did believe, that the clerk had authority to perform the act upon which they relied ; and having advanced a valuable consideration, they are purchasers in good faith, and as such are entitled to protection. (1 *Story's Eq.* § 376 ; 1 *Y. & Coll.* 328 ; 1 *Story's Eq.* § 400, *a ;* 1 *Hare's Rep.* 43 ; *S. C.* 1 *Phil.* 244 ; *Frazer* v. *Western,* 1 *Barb. Ch. Rep.* 220.)

IV. The second mortgage of Jones and Graham was taken by the clerk as a substitute for the first mortgage, and the parties in interest having, with a knowledge of all the circumstances, foreclosed and received the avails of the second mortgage,

they have thereby ratified and confirmed the act of the clerk in taking the substituted security, and are bound by it, with the same effect as though they had originally authorized it.* And having thus ratified and adopted the act of their agent and trustee in part, they are not at liberty to reject another part of the act performed by him, although it may have been to their prejudice. (*Liv. on Agency*, 44, 394, 396 ; *Story on Agency*, §§ 244, 250, 253 ; *Frothingham* v. *Haley*, 3 *Mass.* 70 ; *Wilson* v. *Timmin*, 6 *Man. & Gr.* 236 ; *Foster* v. *Bates*, 7 *Lon. Jur.* 1093 ; *Codwise* v. *Hacker*, 1 *Caines*, 527 ; *Cairnes* v. *Bleecker*, 12 *John. R.* 300 ; *Vianna* v. *Barclay*, 3 *Cowen*, 281 ; *Bell* v. *Cunningham*, 3 *Pet. R.* 81 ; 1 *Am. Lead. Cas.* 421 ; *West Boynton Man. Co.* v. *Searle*, 15 *Pick.* 225 ; *Gaines* v. *Acre, Minor's (Ala.) R.* 141 ; *Hampshire* v. *Franklin*, 16 *Mass.* 76 ; *Zino* v. *Williams*, 9 *Lou. R.* 58 ; *Planters' Bank* v. *Sharp*, 4 *Smedes & Marsh.* 75 ; *Church* v. *Sterling*, 16 *Conn. R.* 389 ; *Burrill* v. *The Nahant Bank*, 2 *Metc.* 163 ; *Lawrence* v. *Taylor*, 5 *Hill*, 107.) This adoption amounts to an *estoppel.* (*Amer. Lead. Cases*, 420 ; *Blair* v. *Pathkiller's Lessee*, 2 *Yerg.* 407 ; *Ruggles* v. *Washington Co.* 3 *Miss. R.* 495 ; *Daggett* v. *Emerson*, 3 *Story's R.* 700 ; *Slate* v. *Perry*, *Wright's Ohio R.* 662 ; *Rogers* v. *Kneeland*, 13 *Wend.* 114 ; *Viggers* v. *Pike*, 8 *Clark & Fin.* 526.) And the adoption extends to the *entire act* of the agent or person professing to act as such. (*Amer. Lead. Cases*, 421 ; *Story on Agency*, §§ 250, 244 ; *Cushman* v. *Loker*, 2 *Mass. R.* 106 ; *Wilson* v. *Poulter*, 2 *Strange*, 859 ; *Newell* v. *Hurlbut*, 2 *Verm. R.* 351.) This view of the case is also sustained by the analogy of the law in relation to *infants*. (2 *Greenl. Ev.* 2d ed. § 367 ; *Goodsell* v. *Myers*, 3 *Wend.* 479 ; *Boston Bank* v. *Chamberlain*, 15 *Mass.* 220 ; *Lawson* v. *Lovejoy*, 8 *Greenl. R.* 405 ; *Delano* v. *Blake*, 11 *Wend. R.* 85 ; *Hillyer* v. *Bennett*, 3 *Edw. Ch. R.* 222 ; *Fontelet* v. *Murrill*, 9 *Lou. R.* 305 ; *Lowery* v. *Blake*, 1 *Dana's R.* 46.) So by the law in relation to the unauthorized acts of trustees. (2 *Story's Eq.* §§ 12, 62 ; *Murray* v. *Ballou*, 1 *John. Ch. R.* 581 ; *Murray* v. *Lylburn*, 2 *id.* 441 ; *Hill on Trustees*, 525, 338.) So upon the doctrine of election as appli-

cable to all the classes above enumerated. (*Bac. Abr. tit. Election; Co. Lit.* 146; *Lawrence* v. *Ocean Ins. Co.* 11 *John.* 241; 2 *Story's Eq.* § 1075.)

V. The doctrine in regard to marshalling assets has nothing to do with this case. That doctrine is only applied in cases where a party has a lien upon, or an interest in, two or more funds for a debt, and another party has a lien upon, or an interest in, only one of the same funds for another debt. In this case the clerk had but one fund, viz: one of the bonds and mortgages, as a security for the $29,000, inasmuch as the condition of giving the last was, that the first should be satisfied. They never existed together. To hold that they did exist together, would be in direct contravention of the agreement upon which the last bond and mortgage were given, and would be a fraud upon the appellants, the grantees of Jones and Graham. (1 *Story's Eq.* § 633; *Chit. on Cont. Springf. ed.* 1842, *p.* 622, 783; *Domat, B.* 1, *tit.* 1, § 1, *sub.* 5; *id.* § 3, *sub.* 1; 1 *Evans' Pothier, p.* 22.)

*Wm. M. Evarts*, for the respondent. I. The validity of the mortgage was not discharged or impaired in any manner by the act of John Walworth, in executing and delivering the paper purporting to be a certificate of the payment of said mortgage. (1.) No clerk of the court of chancery, *virtute officii*, or by statute, had power of his own motion, to discharge, vary or impair the securities for moneys remaining in such court, or in any manner to deal with such securities or moneys, except under the direction of the court itself. (2 *R. S.* 169, 170, 171; *Chan. Rules*, 127, 128, 180.) (2.) The provisions of the statute respecting suits in partition confer but very limited powers, and impose very limited duties upon clerks of courts into which moneys or securities under proceedings in such suits may be brought, in respect of such moneys or securities. These provisions clearly exclude any inference of such authority to the clerk as was exercised in this case. (2 *R. S.* 325, 329, §§ 50, 54, 66, 68, 69.) (3.) The statute respecting suits in partition, distinctly provides in respect of investments of moneys brought

into court in such suits, that " no such security, bond, mortgage, or other evidence of such investment shall be discharged, transferred or impaired, by any act of the clerk, without the order of the court, entered in the minutes thereof." (2 *R. S.* 328, § 70.) This section of the statute is not merely prohibitory of certain acts of the clerk, but renders them, if committed or attempted, entirely inoperative upon the security, which survives unaffected by such acts. But if the provisions of the statute are merely prohibitory on the clerk, then his acts in contravention of its absolute terms are equally void. (*Hallett* v. *Novion,* 14 *John. R.* 273, 290; *Illinois* v. *Delafield,* 8 *Paige,* 527; *Rex* v. *Justices, &c.* 7 *Barn. & Cress.* 12; *Jackson* v. *Andrews,* 7 *Wend.* 152.)

II. The defendants, Jones and Graham, could not oppose any equity to the foreclosure of the mortgage in suit, nor insist upon the validity of the pretended satisfaction piece. They were active parties to the illegal acts of the clerk, and besides, being personally bound for the debt, were indifferent as to what property it is satisfied out of.

III. The defendants, The Farmers' Loan and Trust Company, stand in no better condition in respect of the complainants' equity, than Messrs. Jones and Graham. (1.) They are subsequent mortgagees with actual notice of this mortgage, and an express acknowledgment of its superior lien. (2.) The first parcel of their bonds was advanced to Jones and Graham, in reliance upon the covenant of the latter, that out of them or their proceeds, they, (Jones and Graham,) would pay off this and other incumbrances. The second parcel was advanced upon the representation of Jones and Graham, that they had done so. For this breach of covenant and false representation, they are confined to a personal remedy against Jones and Graham. (3.) The Farmers' Loan and Trust Company were affected with notice of the peculiar character of this security, and if they have acted upon insufficient evidence of its payment or satisfaction, they must bear the consequences of their own error. (*Sugd. on Vend. ch.* 17; 1 *Story's Eq.* §§ 399, 400; *Jackson* v. *Cadwell,* 1 *Cowen,* 622; *Harrison* v. *Fly,* 7 *Paige,* 421; *Grif-*

*feth* v. *Griffeth,* 9 *id.* 317; *Greene* v. *Sluyter,* 4 *John. Ch. R.* 46; *Pitney* v. *Leonard,* 1 *Paige,* 461; 5 *Price,* 306; 7 *Conn.* 333.)

IV. The parties in interest, the owners of the money in court in the partition suit, (the actual complainants in this suit,) had not in any manner waived or impaired their right to enforce the mortgage foreclosed in this suit. (1.) John Walworth never acted by any agency or authority derived from them, and they are not bound by his acts, admissions or acquiescence. He never was their trustee, and never had the legal title or possession of the fund in himself. (2.) Since (by permission of the court) they have resumed the control of their property which had been confided to the court of chancery, they have sought to realize the same from the securities which were delivered to them by the court as the representatives of their fund, in the order which the settled doctrines of this court sanction. (1 *Story's Eq.* §§ 633, 637, *and notes,* § 499.) (3.) The second mortgage, an undoubted security as against Jones and Graham, was on property in which no other parties were interested, and this they first exhausted, and have thereby relieved the property on which The Farmers' Loan and Trust Company had a subsequent lien, from their own prior lien, to the extent of the value of their second security. And the master's sale is conclusive of the value of that security.

V. The case at bar is *sui generis,* and the analogies claimed by the appellants' counsel have no application. (1.) No case for *election,* nor any juncture for entire repudiation or entire ratification, was ever presented to the parties in interest. They never had an opportunity of free choice, or of full repudiation. (2.) The relations of the parties in interest to John Walworth and his acts, are not even illustrated, much less governed, by those of principal and agent, infant and adult, trustee and *cestui que trust.*

VI. The doctrines of election, in the limited extent they are recognized at law, and in their full and complete administration in equity, widely differ. At law, from the imperfection of its processes, they result in estoppel and forfeiture, proceeding upon technical and logical grounds only. In equity they pro-

The Farmers' Loan and Trust Co. v. Walworth.

ceed upon grounds of morality and conscience, to further and sustain in just proportion the conflicting interests of all parties. This case is governed by the latter.

VII. The parties in interest should be held to have made no election or ratification more unfavorable to themselves than the court would have obliged them to make, had the facts within the cognizance of the parties been spread before the court. 1. The court never would have *compelled* them to elect at their peril, between the second and inferior security, and the first security involved at least in litigation, and *prima facie* absolutely nullified. 2. The court never would have *permitted* them to elect to take only the first security, if by such election the second would have become void, and thus the burden of their whole claim thrown upon the property in which innocent third persons had acquired rights. 3. The operation of law upon the facts, was, that the first mortgage was not *satisfied;* that the second mortgage was not a *payment* as against us; but that as regards Jones and Graham and these appellants, it was a payment to its value in money and should be so upheld. In equity, Walworth, (or the parties in interest, and in this connection it is immaterial which,) became affected with a trust to realize the second security, and sustain it as a payment to its value on the first security, in furtherance of the intent of Jones and Graham, and in protection of these appellants, as far as the law would respect that intent, or could afford that protection. This has been done. 4. No party can complain of this treatment of the second security, unless prejudiced by it. No party has been prejudiced by it, and these appellants have been benefited to the extent of $20,000.

VIII. The equitable doctrines of election and of marshalling securities afford the nearest analogies and the best guides for the judicial interpretation of our acts in respect of the two secu rities, and the court is referred for a full discussion and examination of them, and for collected authorities to 1 *Story's Eq.* §§ 633 *to* 637, *and notes; also.* § 499 *and note;* 2 *id.* §§ 1075 *to* 1098 *and notes; Dunlap's Paley on Agency,* 173, 324; 10 *East,* 378; 3 *Pick.* 495, 505.

BRONSON, J.   We are, I believe, all agreed, that the clerk had no authority, without an order of the court of chancery, to take a new mortgage as a substitute for the first, and discharge the first; and that the persons interested in that mortgage had the right to treat it as a valid and subsisting security, notwithstanding the satisfaction which had been entered of record. And this right might be exercised not only against the mortgagors, but against the Loan and Trust Company, although the company had advanced its funds on the faith of the supposed satisfaction.

This brings us to the question whether the owners of the first mortgage have done any act by which they have lost the right of resorting to that security.

The first or original mortgage was given to secure the payment of a loan, made by the clerk, of moneys which had been paid into court on account of the dower of Mrs. Hosack in certain lands which had been sold in a partition suit.   The mortgage was made payable to the clerk, as is usual in such cases; but it was given and received for the benefit of Mrs. Hosack and the persons who would be entitled to the fund on her death. The clerk acted under an authority conferred by law; but the act was done for the owners of the fund, and they were the persons beneficially interested in the mortgage.   If the security had failed, the loss would have fallen on them.

The second mortgage was upon other property.   It was not an additional, but a substituted security: it was to take the place of the first mortgage, which was to be thereby satisfied, and satisfaction was to be, and was in fact entered of record. Such was the arrangement between the clerk and the mortgagors.   It was no part of their purpose to do a wrong to the owners of the fund: the lands covered by the second mortgage were deemed an ample security for the debt; and the only object of Jones and Graham in procuring the substitution of securities was, the better to enable them to complete a pending negotiation with the Loan and Trust Company for a loan of two hundred thousand dollars.   The lots covered by the original mortgage were included, with others, in a conveyance which Jones and

Graham made to the company; and after satisfaction of the original mortgage had been entered of record, and in the belief that it had been legally done, the company lent funds to Jones and Graham to an amount greatly exceeding the amount of the mortgage.

Although the clerk in consenting to the substitution of securities made a mistake and exceeded his authority, he was nevertheless acting for the owners of the fund, and not for himself. It was an act which the fund owners might adopt, and which, when ratified, would completely legalize the substitution of the second mortgage for the first. The first would thereupon be satisfied in law, as well as in form, and the owners of the fund would have the beneficial interest in the new security. But it is said, that when an officer acts under an authority conferred upon him by law, the act cannot be ratified by the person for whose benefit it was done; and we are referred to the case of *Wilson* v. *Tumman*, (6 *Man. & Gran.* 236,) in support of that doctrine. The case proves no such thing. The point decided was, that when an officer, under process against A., seizes the goods of B., without any direction or authority from the creditor, the subsequent assent of the creditor to what has been done, without any act on his part, will not charge him with the trespass which was committed by the officer. But although mere assent would not make him a trespasser, his acts might have that effect. Indeed, it was admitted by Baron Parke on the trial of the cause, that the attorney of the creditor, who was also a defendant, would have been liable for the trespass, if the goods had been detained under an authority which he gave for that purpose subsequent to the seizure. And besides; although the creditor was not answerable to the owner of the property for the trespass, that does not prove that the act of the officer was in its nature incapable of ratification, so that nothing could be done to give it effect as between the creditor and the officer. It is undoubtedly a general rule, as was said in that case, that a man cannot adopt an act which was neither done for him, nor in his name. (See *Saunderson* v. *White*, 5 *B. & C.* 909; *Vere* v. *Ashby*, 10 *id* 288.) But when an officer executes process in favor of a

creditor, although his authority is conferred by law, he acts for, and is the agent of the creditor in such a sense that the act is capable of ratification. I have met with no case which holds a different doctrine. In *Armstrong* v. *Garrow,* (6 *Cowen,* 465,) the defendant, as sheriff, had arrested one Mumford on a *ca. sa.* in favor of the plaintiff, and on receiving the promissory note of a third person for the amount of the debt, had discharged Mumford out of custody. The sheriff had done an illegal act: the note was void in his hands, and he was liable to answer the plaintiff for the escape. Still the plaintiff was willing to accept the note, and demanded it of the sheriff, who refused to give it up. The plaintiff thereupon sued the sheriff for money had and received to his use, and recovered. The sheriff insisted that he could only be made liable in an action for the escape. But the court held, that the plaintiff might affirm the act of the sheriff, consider the execution paid, and call on him for the money. It was further held, that had the note been delivered to the plaintiff, the ratification would have made it a valid security in his hands. And from the note of the learned reporter it seems also to have been considered, that after the plaintiff had recovered against the sheriff on the ground that his act in taking the note had been affirmed, the note would have been valid in the hands of the sheriff. This rests on the principle, that a subsequent ratification is equivalent to an original authority. In *Pilkington* v. *Green,* (2 *B. & P.* 151,) the officer arrested Green on process in the nature of a *ca. sa.* issued by the commissioners of excise, and discharged Green out of custody on receiving promissory notes for the amount of the debt. The commissioners afterwards sanctioned what had been done; and on that ground the notes were held to be valid in the hands of the officer. The case of *Sugars* v. *Brinkworth,* (4 *Camp.* 46,) affirms the same principle. (*See also Corning* v. *Sutherland,* 3 *Hill,* 552.) There are undoubtedly many other cases which have gone upon the ground that an act done under an authority conferred by law might be adopted by the person for whose benefit it was done. Indeed, I doubt whether the principle has ever before been questioned; and I

think it quite safe to conclude, that the acts of the clerk in rela-
tion.to the two mortgages in question were of such a nature
that they might be ratified by the persons interested in the fund

If the act of the clerk was of such a nature that it might be
adopted and made their own by the persons interested in the
fund, it is a point almost too plain for discussion that it was in
fact ratified.   Let us see what was done.   In 1842, Mrs. Hos-
ack having previously died, the owners of the fund were desi-
rous of taking the money out of court, and for that purpose
propose to call in the loan which had been made to Jones and
Graham.   They learned from the clerk and the public records
every thing which was necessary to enable them to act with a
just regard to their own interest.   They knew that the first
mortgage had been discharged, and that the second had been
taken as a substitute for it.   They knew also that Jones and
Graham had become insolvent; and from that fact they infer-
red, as well they might, that Jones and Graham had parted
with the property covered by the first mortgage to some one;
and if they had looked at the public records, they would have
found the conveyance to the Loan and Trust Company.   There
was clearly enough to put them upon inquiry, and they were,
I think, chargeable with notice of that conveyance.   It is
enough, however, for the present, to say, that they had actual
knowledge of every thing which had taken place between the
clerk and Jones and Graham; and that they had good reason
to believe, and did in fact believe, that some third party then
owned the lands which were covered by the first mortgage.
They knew, or were bound to know, that they had not a shad-
ow of title to both of the mortgages : that if they asserted their
right to the first, they could have no right to the second; and
if they took the second, they could have no further claim upon
the first.   The alternative was thus fairly presented, whether
they would disaffirm the act of the clerk, and take the first
mortgage ; or whether they would adopt his act, and take the
second.   They elected to take the second mortgage ; and did
take and foreclose it, and put in their pockets the money pro-
duced by the sale of the property.   They had no color of title

to that mortgage, except upon the ground of adopting the act of the clerk in taking it; and it can hardly be doubted that there was a complete ratification.

It is true that the owners of the fund had the secret intention of falling back upon the first mortgage, if the foreclosure of the second should not produce enough to pay the debt. They intended to adopt the act of the clerk so far as it was beneficial to themselves, and to reject the residue. That, the law would not permit them to do. They had no choice but to take the whole, or none; and when they confirmed the agency in part, they ratified the whole transaction. By foreclosing the second mortgage, they confirmed the discharge of the first. This principle is so just in itself, and is so firmly settled, that I need do no more than refer to one or two books where many of the authorities are collected. (*Story, Agency,* § 250; *Paley, Agency,* 172, *Dunlap's ed.*) It would be strange indeed if the law would permit them to have the second mortgage, to which they have no title whatever except by affirming the act of the clerk, and yet allow them to reject that part of his act which induced the giving of that mortgage.

As the owners of the fund have, with their eyes open, agreed to the satisfaction of the mortgage which they are now attempting to foreclose, it cannot be very important to inquire whether they acted wisely or not, or whether they will be gainers or losers by the decision which they made. Nor is it important to know whether the Trust Company is better or worse off than it would have been had the owners of the fund disaffirmed the agency, and foreclosed the first mortgage. But as the owners of the fund think it hard that they should be held to the election which they made, I will briefly inquire how the case would stand without any special regard to the doctrine of ratification.

And in the first place, the owners of the fund had no right to both mortgages. Although Jones and Graham were bound to pay the debt, they were under no obligation to give additional security for the payment; and they never gave any. They executed a new security as a substitute for the first, and on the condition that the first should be discharged. The owners

of the fund had no right to the new security, except upon the terms on which it was made and offered to them. If they took it, they, by that act, plainly consented to the discharge of the first mortgage. If, on the other hand, they determined to keep the first security, they could have no title to the second, because they would not assent to the terms on which it was offered to them. I am not aware of any rule, either of law or of equity, which will permit a creditor to accept a pledge or other security for his debt, and yet repudiate the condition on which the security was given. Debtors have rights as well as creditors. The case is still stronger in favor of the Trust Company, who are bona fide purchasers from Jones and Graham. Clearly the owners of the fund had no title to both mortgages; and yet the decree which has been made goes upon the ground that they have such a right, and that, after having foreclosed one mortgage, they may resort to the other. It is impossible, I think, that such a decree can stand.

But it is said, that had there been an attempt to foreclose the first mortgage, the Trust Company would have insisted, and equity would have decreed, that the owners of the fund should first exhaust their remedy under the second mortgage, and thus xonerate, in whole or in part, the lands which the company nad purchased from Jones and Graham : that by resorting to the second mortgage in the first instance, the owners of the fund have done no more than equity would have compelled them to do, and that the company can sustain no damage. This argument is open to several objections. In the first place, it assumes that the owners of the fund had two securities, and a right to resort to both of them, when such is not the fact. They had title to only one security, with an election between two as to which they would take. In the next place, the argument assumes that the company would have insisted that the second mortgage should be first foreclosed, when there is nothing to show that they would have made any such claim. I think the company would have reasoned differently, and said, " We cannot prevent the foreclosure of the first mortgage, and will not attempt it : if we are thus deprived of the property

which we purchased from Jones and Graham on the faith that the first mortgage was satisfied, we shall have a clear equitable claim to the use of the second mortgage for our indemnity, and equity will decree us such right; that will be just as between us and Jones and Graham; it will leave to the owners of the fund all the security which they ever had a right to claim; and no wrong will be done to any one." Thus they might, and undoubtedly would have reasoned, if they had followed their own interest. There is no foundation, therefore, for the argument, that the owners of the fund have done only what equity would have compelled them to do had they resorted to the original mortgage in the first instance. The company would not have asked such a decree; or at any rate, no one can undertake to affirm that they would have done it. If the owners of the fund had wished to know what the company would say on a bill filed to foreclose the original mortgage in the first instance, they should have filed such a bill, and made the company a party, and thus allowed them to answer for themselves. As that was not done, the owners of the fund can have no right now to guess what the company would have done under such circumstances, and build up a claim upon that foundation.

And finally, the course which the owners of the fund have pursued, and are now pursuing, will give them more than their just rights, and will do it at the expense of the Trust Company. The sale on the foreclosure of the second mortgage took place in October, 1842. Had the first mortgage, instead of the second, been foreclosed at that time, I do not understand from any of the witnesses that the property would have brought enough to pay the debt. The assistant vice chancellor states the effect of the evidence to be, that on a sale in the fall of '42, the lands included in the first mortgage would not have brought any more than was realized from the sale under the second mortgage. Assuming that the lands conveyed by the two mortgages would at that time have sold for equal sums of money, let us see how the case stands. The owners of the fund have got already—not the whole debt—but all that they ever had a right to claim beyond the personal obligation of the mortgagors

They have had their election between the two mortgages; and as it turns out, the choice was not a bad one; for they have got as much by taking the second as they would have obtained by taking the first. And further, had they elected to take the first mortgage, they would have got no more than they have got now; and they would then have had no color of title to the second mortgage. The Trust Company would in that case have had a plain equity to use that mortgage for their benefit; and thus they would have got a lien upon as much property in value, as they would have lost by the foreclosure of the first mortgage. In short, whatever election between the two mortgages the owners of the fund might have made, the Trust Company would have remained unharmed. But how is it now? After the owners of the fund had got all which they had any right to claim from their land security, and had left the Trust Company nothing more than its just rights, they filed this bill, and have obtained a decree charging the lands conveyed to the company with the payment of more than eighteen thousand dollars. I can see no just foundation for such a decree, nor for any decree, against the company.

It is possible that the lands covered by the first mortgage would have brought more on a sale in the fall of '42, than was realized from the sale under the second mortgage. But it is evident from the nature of the case as detailed by the witnesses, that it is now utterly impossible to determine, with any degree of accuracy, what the lands in the first mortgage would have brought at that time. There can at the most be nothing better than mere conjecture, without any such certainty as is necessary for the basis of a judicial determination.

In any view which I have been able to take of the case, we are brought to the same conclusion. I am of opinion that the decrees of the court of chancery and the supreme court should be reversed; that the bill should be dismissed; and that the Trust Company should have costs in the courts below. It is not usual to give costs in this court on the reversal of a decree.

RUGGLES, J. delivered an opinion in favor of reversing the decree, concurring substantially in the views of BRONSON, J

The Farmers' Loan and Trust Co. v. Walworth.

GARDINER, J. also delivered an opinion for reversal upon similar grounds. He further remarked as follows:

It was insisted that the equitable doctrine of marshalling se curities affords the nearest analógies and best guide for the interpretation of the acts of the complainants in reference to the two securities in question. I am unable to perceive any analogy between the cases. The familiar principle, that if one party has a lien on two funds for a debt, and another party a lien on one of those funds for another debt, equity will compel the former to resort to the fund in which he has an exclusive interest in the first instance for satisfaction, has no application to these parties. To authorize the interference of a court of equity in the case supposed, the first creditor must have a lien upon, or interest in, each of the funds, with the right as between him and his debtor, to resort to both or either of them for satisfaction. But the complainants in interest in this cause, as we have seen, never had a lien upon both of these mortgages. They had an election which of the two they would take, and when that was determined, the exclusive and absolute right to the one chosen, and that only.

There is another, and to my mind an insuperable objection, to the maintenance of this suit. The equity by which the complainants would avoid the effect of their own deliberate acts in affirmance of the second mortgage and a ratification of the act of the clerk in discharging the first, is an equity in behalf of the Trust Company, and not in favor of the complainants.

The design of Jones and Graham and the clerk, as we have seen, was to substitute the second for the first mortgage. They failed in this, as the complainants allege, in consequence of not obtaining the sanction of the court. The appellants, who in good faith advanced their money, relying upon the validity of the discharge of the original mortgage executed by Walworth, must lose all, or be remitted to the second security. This is *their equity*. It results from the election of the complainants to avail themselves of their legal right to the first mortgage. How can this equity be invoked by the complainants to sustain this suit? By what right did they constitute themselves the

Vanderheyden *v.* Mallory.

guardian of the Trust Company, and undertake, by foreclosing the second mortgage, to determine for the latter the time and circumstances under which they shall enforce a claim implied in equity exclusively in their favor? The foreclosure of the second mortgage, without adopting the acts of the clerk in discharging the first, in virtue of the equity above mentioned, and without making the appellants parties to the suit, if not a fraud upon them, was without color of right.

The supposed trust in favor of the appellants, with which the complainants now claim they were affected, was not suggested or alluded to in that suit, but they foreclosed as the rightful and absolute owners of the second mortgage. I think they must be concluded by their election to accept the second security, made under the circumstances and with the knowledge disclosed by the pleadings and proofs in the cause.

The bill can be sustained only upon the assumption that the second mortgage was given as additional security for the same debt, an assumption without proof and entirely repugnant to the arrangement of the parties and the purpose for which it was executed. The decrees of the supreme court and of the assistant vice chancellor must be reversed.

And thereupon the decrees of the assistant vice chancellor and of the supreme court were reversed, and the bill ordered to be dismissed with costs in the courts below, but not on this appeal.