GILES H. G. FOWLER, as Executor, etc., Respondent, *v.*
THE BOWERY SAVINGS BANK, Appellant.

*Court of Appeals, April 23, 1889.*

Reversing 47 Hun, 399.

1. *Savings bank. Relation with depositor.*—The relation between a savings
bank and a depositor, even though the deposit is expressed to be for
the benefit of a third person, is that of debtor and creditor, and the
same relation exists between the bank and the executor of the de-
positor, or of the beneficiary.

2. *Same. Election of remedies.*—If, after a demand of the deposit, the bank
pays the money to a wrongful claimant, the executor of the beneficiary
must elect whether he will sue the bank or the claimant. If he sues
the claimant for money received to his use, he thereby adopts and
ratifies the payment to the claimant, at least if he prosecutes the action
to judgment, and cannot afterwards, even though unsuccessful in
collecting the judgment, maintain an action against the bank.
   See Note at end of this case.

3. *Same.*—In case the money had been left on special deposit with the
bank for plaintiff's testatrix, the plaintiff could have exhausted his
remedies against the claimant, and, if unsuccessful, would not, it
seems, have lost his remedy against the bank.

4. *Same. Appeal.*—The defense that the executor of the beneficiary has
adopted and ratified the payment of the deposit by the savings bank to
the claimant, must be set up in the answer ; but, where all the facts
relating to such defense are proved without objection and found by the
trial court, and are sufficient to constitute the defense, the objection
that the answer is defective is unavailable on appeal to the court of
appeals.

Appeal from a judgment of the general term of the
supreme court, affirming a judgment entered upon the
decision of the court.

*Carlisle Norwood, Jr.,* for appellant.

*Eugene Burlingame* and *Benjamin W. Downing,* for re-
spondent.

EARL J.—On the 15th day of November, 1871, John White, the husband of Elizabeth White, deposited with the defendant, in trust for his wife, the sum of $805.93, and the deposit was entered upon a pass-book, which was delivered to him, in this way: " Bowery Savings Bank in account with John White, for Elizabeth White." This deposit remained in the bank during the lifetime of John White, who died November 13, 1882, leaving a will wherein he appointed John D. Flynn his executor. The will was admitted to probate and letters testamentary were granted to Flynn on the 23d day of January, 1883. Elizabeth White died December 18, 1882, leaving a last will and testament in which the plaintiff was named as executor, which will was admitted to probate, and letters testamentary were issued to the plaintiff on the 11th day of January, 1883. On the 25th day of January the plaintiff, with his letters testamentary, called at the savings bank and notified it of his appointment as executor, and demanded payment of the deposit. He was told by one of its officers that the money would be paid to him when he came with the pass-book which was then in the possession of Flynn, the executor of John White.

Thereafter, on the 29th day of January, Flynn having in his possession the pass-book, presented the same to the defendant, together with proof that he had been appointed executor of John White, and demanded payment of the deposit, and the defendant thereupon paid the same to him, and the pass-book was surrendered to it. Thereafter, on the same day, the plaintiff called on the defendant again in reference to the deposit, and was informed that it had been paid to Flynn. This action was commenced in June, 1886, to recover the sum deposited with the defendant, and interest thereon.

It is clear that the plaintiff was legally entitled to receive payment of the deposit from the defendant, and that after the notice and demand by him, it had no right whatever to

pay the same to Flynn; and but for facts yet to be stated, the cases of Martin v. Funk (75 N. Y. 134), Willis v. Smyth (91 Id. 297), and Mabie v. Bailey (95 Id. 209) would be ample authority for the maintenance of this action.

After payment by the defendant to Flynn, the plaintiff, in the fall of 1883, commenced an action against him to recover, among other things, the money thus paid. Issue was joined and the action was tried in the fall of 1884, and a verdict was rendered in favor of the plaintiff, and a judgment was thereon entered. The plaintiff was unable, however, to collect anything on the judgment, and he thereafter commenced this action.

The relation between a savings bank and a depositor therein is that of debtor and creditor, and the defendant, therefore, became a debtor for the sum deposited with it by John White. People v. Mechanics' and Traders' Institution, 92 N. Y. 7. After his demand of the deposit, and the payment of the money to Flynn, there were two remedies open to the plaintiff. He could sue the defendant as a debtor for the deposit and recover the amount thereof from it; or he could have brought an action for money had and received to and for his use against Flynn, and recover it from him. But he was not entitled to both remedies at the same time or in succession, and by electing the one he would lose the other. By electing to sue the bank he would repudiate its payment to Flynn, and his claim would be that the debt had not, in fact, been paid.

By suing Flynn he would adopt and ratify the act of the bank in making payment to him, and his claim would be that the money due to him had in fact been paid to Flynn, and that Flynn had received it to and for his use. Such adoption and ratification of the payment would legalize the payment as between him and the bank, and thus discharge the bank.

He could not occupy the position at the same time of claiming that the bank had paid his money to Flynn, and

yet that the bank was still his debtor. His election in this case to sue Flynn and thus to treat him as his debtor was not harmless to the bank, but in law may be presumed to have injured the bank unless it should now be held to be discharged by its payment to Flynn. After the plaintiff commenced his action against Flynn and thus ratified and adopted the payment by the bank to him, the bank could not during the pendency of that action have sued Flynn to recover back the money on the ground that it had been paid by mistake and received by him without authority, because it would have been a defense to such an action that the real owner of the fund had adopted and ratified the payment. But even if the mere commencement and pendency of the action by the plaintiff against Flynn would not have furnished such a defense, it is beyond doubt that if the bank should now bring an action against Flynn to recover back the money, he could successfully defend on the ground that the plaintiff had ratified and adopted the payment and thus discharged the bank, by the recovery of a judgment against him for the money paid as the real owner thereof.

The two remedies, one against Flynn and the other against the bank, are not concurrent. If the two actions could not be prosecuted at the same time, they could not in succession. Nothing could be more inconsistent than an action against Flynn on the ground that money due to the plaintiff had been paid to him, and an action against the bank on the ground that it had not paid the deposit, and still remained debtor therefor. If the money had been absolutely the money of the plaintiff, left on special deposit with the bank, then he could have pursued the money wherever he could trace it without losing his remedy against the bank. In such a case the plaintiff would not be barred of his right of recovery against the bank until he had either recovered his money or the value of the same. All his remedies would be consistent, being based upon the theory

of a wrongful disposition of his property.  So too where a trustee in breach of his trust disposes of the trust property, the beneficiary of the trust may pursue it or its proceeds wherever he can trace them so far as the law will permit him to do so without releasing the trustee.

All his remedies in such a case are consistent, and based upon the same theory, to wit, a breach of trust.  But if a trustee is bound to pay money to a beneficiary, as a debt due from him to the beneficiary, then if he makes payment to another person, he has not paid the debt, and the money paid is not, in fact, the property of the beneficiary.  In such case the beneficiary may ignore the payment, and sue the trustee as his debtor, or he may ratify and adopt the payment and sue the person receiving the money as his debtor; but he cannot do both.  There is in such case a breach of trust, or not, as he may elect, and his election once effectually made is conclusive forever.  Comyn's Digest, Election C., 2. If one wrongfully takes and sells personal property not belonging to him, the owner has the election to sue him for the proceeds as money had and received to and for his use, and thus ratify the sale, or he may pursue the property and recover it or its value ; but he cannot do both and is bound by his election.  Pomeroy on Remedies, sec. 567, *et seq.*

A few authorities may be cited to enforce these views. In Priestly *v.* Fernie, 3 Hurlstone & Coltman, 977, it was held that where the master of a ship signs a bill of lading in his own name, and is sued upon it, and judgment is obtained against him, an action will not lie against the owner of the ship upon the same bill of lading, although satisfaction has not been obtained on the judgment against the master. Baron BRAMWELL, writing the opinion, said: " If this were an ordinary case of principal and agent, where the agent having made a contract in his own name, has been sued on it to judgment, there can be no doubt that no second action would be maintainable against the principal.  The very expression that where a contract is so made, the contractee

has an election to sue the agent or principal, supposes he can only sue one of them, that is to say, sue to judgment." In Scarf *v.* Jardine, 7 Appeal Cases, L. R. 345, the facts were these : A firm of two partners dissolved ; one retired, and the other carried on the business with a new partner under the same style.

A customer of the old firm sold and delivered goods to the new firm after the change, but without notice of it. After receiving notice he sued the new firm for the price of the goods, and upon their bankruptcy proved against their estate, and afterwards brought an action for the price against the late partner, and it was held that the liability of the late partner was a liability by estoppel only, and not jointly with the members of the new firm; that the customer might, at his option, have sued the late partner, or the members of the new firm, but could not sue all three together, and that having elected to sue the new firm, he could not afterwards sue the late partner. In that case Lord BLACKBURN said that the cases " are uniform in this respect, that where a man has an option to choose one or other of two inconsistent things, when once he has made his election it cannot be retracted ; it is final and cannot be altered." " When once there has been an election to do one of two things you cannot retract it and do the other thing ; the election once made is finally made."

Lord WATSON said : " The plaintiff had the undoubted right to select his debtor, to hold either the old firm or the new firm responsible to him for the fulfillment of the contract, but I know of no authority for the position that the respondent could hold his contract to have been made with both firms, or that having chosen to proceed against one of these firms, for recovery of his debt, he could thereafter treat the other firm as his debtor."

In Rawson *v.* Turner (4 Johns. 469), it was held that if a new sheriff receives a prisoner from his predecessor he is answerable for his escape, though a voluntary escape may

have existed in the time of his predecessor, but the plaintiff has his election, either to consider the prisoner in execution and so charge the new sheriff for the last escape, or as out of execution and charge the old sheriff. If he has once made his election and sued the old sheriff and recovered judgment against him, it is conclusive, and a bar to any action against the new sheriff.

In Sanger *v.* Wood (3 Johns. Ch. 416), Chancellor KENT said : " Any decisive act of the party, with knowledge of his rights and of the fact, determines his election in the case of conflicting and inconsistent remedies."

In Morris *v.* Rexford (18 N. Y. 552), there was a bargain and sale of goods for cash, and the vendee took possession, but failing to make payment, the vendor obtained a re-delivery of his goods by writ of replevin, and it was held that this was a disaffirmance of the sale and evidence in bar of a subsequent action for the purchase money, and that the vendor having elected the one remedy, his right to pursue the other was extinguished.

COMSTOCK, J., writing the opinion, said : " A vendor of goods, on a sale and delivery upon cash terms, if he fails to get payment, may consider the delivery absolute, and rely on the responsibility of the vendee, or he may disaffirm and reclaim his property. But he cannot do both of these things. The remedies are not concurrent, and the choice between them once being made, the right to follow the other is forever gone. The law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them, and an action by the same person, founded on the sale and delivery of the same goods, for the recovery of the price. In peculiar circumstances a party may take either one of these courses, but having rightfully made his choice, the right to follow the other is extinct and gone."

So, here, the law will not tolerate the absurdity of holding that the plaintiff could sue Flynn on the ground that he had received money from the bank belonging to him, and

at the same time sue the bank on the ground that it still remained his debtor, and that the money paid to Flynn was not his money and did not operate as payment.

In Gardner *v.* Ogden (22 N. Y. 327), it was held that the clerk of a broker, employed to sell land, having access to the correspondence between his principal and the vendor, stands in such a relation of confidence to the latter that, if he becomes the purchaser, he is chargeable as trustee for the vendor, and must reconvey or account for the value of the land, and the vendor having brought suit against both the broker and his clerk, making a claim against the broker for having fradulently sold the land, and against the clerk for a reconveyance or accounting, the court said: "In the present case the plaintiff has elected to regard the purchaser as his trustee, and his complaint, as to him, proceeds on this basis. The plaintiff, therefore, elects to affirm the sale made by Smith. He cannot, *uno flatu*, affirm it as to him and disaffirm it as to Ogden. The affirmance of the sale by the plaintiff is a complete answer to the claim for damages against the firm for fraud in making the sale."

In the Bank of Beliot *v.* Beale (34 N. Y. 473), it was held that when a vendor who has been defrauded in the sale of his goods proceeds to judgment against the vendee upon the contract of sale, after he is apprised of the fraud, his election is determined, and he cannot afterwards follow the goods, or the proceeds thereof, into the hands of a third person on the ground of fraud; that if a principal with full knowledge of a fraud perpetrated by his agent, in the disposition of property purchased with his funds, prosecute the agent to judgment for the money so misappropriated, he thereby elects to treat the goods as the property of the agent, and cannot afterwards claim their proceeds in the hands of a third party.

In Rodermund *v.* Clark (46 N. Y. 354), W. and defendant were joint owners of a sloop. Defendant, ignoring W.'s rights, sold the whole vessel to M. W. after the sale,

took and retained possession.  M. thereupon libeled the vessel as owner in the United States district court.  She was seized by the marshal, and M. having obtained judgment by default, she was delivered to him.  W. assigned his interest, and also his claim against defendant, to the plaintiff, who sued for conversion ; and it was held that W. having elected to assert his rights by retaining possession and refusing to recognize the sale, he and his assignee were precluded from maintaining an action for the conversion ; that where a party has an election between inconsistent remedies, he is confined to the remedy which he first chooses.  FOLGER, J., writing the opinion, said : " W. had two courses, either of which he might pursue.  He could sue the defendant for the conversion, or he could assert his right of possession by keeping a permanent possession, or regaining possession if it was interrupted.  The effectually taking of either of these two courses precluded him from taking the other."

In Bowen *v.* Mandeville (95 N. Y. 237) it was held that where a party had been induced by fraud to enter into an executed contract for the purchase of property, he may either rescind and recover back the consideration paid, or affirm the contract and recover damages for the fraud ; he cannot have both remedies, as they are inconsistent.

In Cheeseman *v.* Sturges (9 Bos. 246), S., one of the defendants, held real and personal property in trust, to be used for the joint benefit of himself and the plaintiff and a third person, in specified proportions as copartners in a joint enterprise, and under an agreement that he was to make advances for carrying out the enterprise, and that all stocks or other securities than cash which should be received should remain undivided until a final settlement, and that he would not dispose of the property (other than money) without the consent of the others.  He accordingly made large advances, and subsequently sold and conveyed all the property without the consent of the plaintiff, and received

therefor stock of an incorporated company, and it was held that the plaintiff, by bringing an action, with full knowledge of these facts, in which he demanded a transfer of his share of the stock, and obtained an injunction against any disposal of it, pending the action, must be deemed to have made his election of that remedy and be treated as if he had consented to the sale.

In Mattlage *v.* Poole (15 Hun, 556), it was held, in substance, that where a vendor sells goods to the agent of an undisclosed principal, he may elect whether he will sue the agent for the price of the goods or the principal, but that he cannot have a recovery against both, and that where he has prosecuted the one to judgment, he can have no recovery against the other. In Riley *v.* The Albany Savings Bank (36 Hun, 513), plaintiff's intestate, Mary Riley, had deposited with the defendant upwards of $800. The money was paid to Flannigan during the lifetime of Mary Riley, upon the production by him of the pass-book and Mary Riley's check. It was claimed that at the time of signing the check Mary Riley was of unsound mind, and incapable of executing the same. After Riley was appointed administrator he presented a verified petition to the surrogate, under section 2706 of the Code of Civil Procedure, charging Flannigan with having corruptly procured an order from Mrs. Riley, knowing her to be insane, and having drawn the money from the bank; and further averring that he then had the same in his possession, and praying that he be compelled to surrender the same to the petitioner. Flannigan appeared on the return of a citation, and admitted that he obtained the money from the bank, and that the same was in his possession; and a decree was entered directing him to deliver the same to the administrator. For his failure to comply therewith he was committed to the county jail, where he remained until discharged therefrom by the surrogate because of his inability from sickness to bear longer confinement; and it was held

19

that the administrator, by claiming in his petition and procuring a decree of the surrogate's court adjudging that the money in Flannigan's hands belonged to the estate of Mary Riley, ratified the act of Flannigan in drawing the money, and could no longer claim that the bank still owed to him the same money, or bring an action against it to recover the amount of the deposit; that the administrator had an election to treat Flannigan's act in drawing the money in two ways, viz., either to ratify or to disavow it; that having elected to ratify it he could not thereafter disavow it. That case was appealed to this court, and the order of the general term reversing the judgment in favor of the plaintiff was here affirmed.   103 N. Y. 669; 7 N. Y. State Rep. 861.

The following authorities are to the same effect:   Curtis *v.* Williamson 10 Q. B. L. R. 57; Clough *v.* London, etc. R. R. Co., 7 Ex. L. R. 26; Raymond *v.* Proprietors, et, 2 Met. 319; Sears *v.* Carrier, 4 Allen, 339; Cobb *v.* Knapp, 71 N. Y. 348; Moller *v.* Tuska, 87 Id. 166.

This extended examination of the authorities has seemed necessary on account of some difference of opinion upon the question considered which at first existed among the members of this court.   It is seen that they justify the conclusion that plaintiff's election to sue and his recovery against Flynn furnished a defense to this action.

It is, however, objected on the part of the plaintiff that the defense that the bank had adopted and ratified the payment to Flynn, is not set up in the answer and such is the case.   While the defendant alleges, in its answer, payment to Flynn, it does not allege that payment was made by the authority of the plaintiff or that he ratified or adopted it.   But there was no such objection upon the trial.   All the facts pertaining to that defense were proved without objection.   There was no dispute about the facts, and they were found by the court.   Hence the objection that the answer is defective is unavailable here.

We are, therefore, of opinion that the judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except RUGER, Ch. J., who reads for affirmance.

RUGER, Ch. J. (dissenting).—I am unable to concur in the opinion delivered in this case.   I am of the opinion that the prosecution of Flynn by the plaintiff's intestate was not a ratification of the payment by the bank to him.   Flynn, in obtaining such payment, neither represented or assumed to represent Mrs. White, and the bank did not pay the money to Flynn as the agent or representative of Mrs. White, but dealt with him as a claimant of the money in his own right.   Under such circumstances there could be no ratification.   Ratification is a branch of the law of agency, and cannot be held to have occurred unless there is a principal, and an act assumed to have been done by some one in his name or on his behalf.   Story on Agency, § 251; The Farmer's Loan and Trust Co. *v.* Walworth, 1 N. Y. 433.

There were, consequently, no concurrent remedies, and no occasion for an election by the plaintiff.

---

## NOTE ON " ELECTION OF RIGHTS AND REMEDIES."

One of the most important duties of the lawyer is to guide his client aright in laying the foundation for the anticipated litigation, and to select, with sound judgment, the remedy to be pursued in obtaining the desired relief.   A mistake, in either case, may occasion a miscarriage of justice.

The following note may aid the practitioner in electing the remedy, whereby he may best secure his client's rights :

*Election generally.*—Where a complaint contains two causes of action, resting substantially upon the same facts, in one of which the defendant was sought to be made liable in one, and in the other cause of action, in another character, the plaintiff ought to be put to an election; and the denial of such a motion, where the effect is to greatly embarrass the defense, is ground for a new trial.   Roberts *v.* Leslie, 14 J. & S. 76.   So a plaintiff will be put to an election between two suits for the same cause of

action, one of which is prosecuted in another state, though the parties in both suits are not precisely the same.  Bell v. Donohue, 15 Id.  458.

Where a complaint alleges two inconsistent causes of action, the plaintiff may be called upon, at the conclusion of the evidence, to elect upon which cause of action he claims to recover.  Stewart v. Huntingdon, 48 Hun, 620. When such election is made and a judgment rendered in the action, no claim can, upon an appeal therefrom, be advanced upon the cause of action which has been rejected, as, by the election, it has necessarily been eliminated from the record.  Id.

In Farmers' Loan and Trust Co. v. The Bankers and Merchants' Tel.. Co., 53 Hun, 636, a petition was presented to set aside a sale made under a. decree of foreclosure.  The proceeding was not instituted until two years after the sale.  But immediately after the sale the petitioner began suit against the purchaser, to have it adjudged that he made the purchase in trust.  And it was held that the institution of that action was an affirmance of the sale, so far as the petitioner is concerned; and that he thus elected to have the sale stand.

In Kramer v. Amberg, 53 Hun, 427, an action was brought to have the lease of a building, known as the Thalia Theatre, declared and adjudged to have ceased and come to an end, on account of the act of the lessee in subletting the said premises in violation of the terms of the lease.  The plaintiff was the owner of the said building, and entered into an agreement with the defendant to let the premises to him.  It provided among other things that the defendant should not assign his interest in said lease, or underlet or sublet the whole or part of said premises, without the written consent of the plaintiff.  The defendant did sublet the premises without the consent of plaintiff, who alleges in his complaint that he has in no way acquiesced in or approved of said sub-lease, or the occupation of the building by the sub-tenant for any purpose whatever; and that he elects to have the said lease, on account of the violation of its provision, cease, determine and come to an end immediately; and that the lessee be enjoined and restrained from permitting the sub-tenant to occupy the said theatre.  A motion was made upon the complaint for an injunction restraining the defendants and each of them from continuing to use, occupy or interfere with the premises; and also enjoining the lessee from making any lease, sub-lease or assignment of his lease to any person.  The motion was denied, and from the order entered thereupon an appeal was taken. And it was held that the plaintiff, for the breach of the condition of the. lease not to assign or sublet, had two remedies, either in an action upon the covenants in the lease to enjoin the lessee from subletting or assigning, or to re-enter because of the breach in the covenant.  The plaintiff has elected, by virtue of the allegations in his complaint, to have the lease cease, determine and come to an end immediately.  He had a right to make this election, and, if the convenant in the lease were violated, the lease, by reason of such election, terminated, and the plaintiff had after-

wards no right of action thereon for the reason that it had ceased to exist. After he has elected that the lease should terminate, he cannot seek, by an action, to enforce any covenants contained in the instrument which has ended. If he had not elected that the lease should determine and come to an end by reason of the breach of these covenants, he would have had the right, by injunction in a proper suit in equity, to enforce the covenants in the lease. But after his election to consider the lease ended, the only remedy he had was a right of re-entry, which was to be enforced by ordinary proceedings for the recovery of the possession of real property unjustly withheld from its true owner, viz., by an action in ejectment.

In Goff *v.* Craven, 34 Hun, 150, the receiver of a judgment debtor in supplementary proceedings brought an action of trover against him to recover a watch chain, which he had refused to deliver to the plaintiff. A judgment was recovered in this action, and the judgment debtor was arrested on an execution issued thereon and committed to jail. Here he remained for thirty days, when he was discharged. The judgment debtor after the rendition of said judgment delivered the chain for safe keeping to the defendant in the present action. Upon her refusal to deliver it to the receiver, he brought this action of replevin against her. It was held that he was entitled to recover; that the recovery of the judgment in the action of trover brought against the judgment debtor, and his imprisonment thereunder without actual payment or satisfaction, were not sufficient to change the title of the chain from the receiver to him, and that, as the judgment debtor had no title thereto, he could confer none upon the defendant.

In Stewart *v.* Huntingdon, Ct. of Ap., Jan. 14, 1891, plaintiff alleged in his complaint that it was agreed between him and defendants, in order to induce him to sell certain stock to them, that, in case any person or party other than the plaintiff should be paid by the defendants any higher price per share for the stock than that paid to him, then they would pay him such additional sum; and he also alleged that defendants agreed that if, after a contemplated visit of a certain person to California, plaintiff should become dissatisfied with such sale, they would return the stock to him, which they afterwards refused to do. And it was held that, as one cause of action was for the value of the stock based upon a rescission of the contract, and the other for a balance of the purchase money based on an affirmance of the contract, the two causes were inconsistent, and plaintiff must make his election, and would not be permitted to go to the jury upon both causes of action.

A party cannot have relief both in rescission and in affirmance of a contract. Hence, it was held in Creighton *v.* Haggerty, 50 Super. 9, in a controversy arising out of a contract as to the use of a patent right, that the plaintiff, if he elects to rescind the contract, cannot have an injunction against its violation.

Where a person who claims to be a shareholder in a corporation, but is

not recognized as such by the corporation, and who thereupon elects to treat the refusal of the corporation to recognize him as a stockholder as a conversion of his shares, and brings an action against it for conversion, cannot, during the pendency of the action, nor can his assignee, sue for .dividends. Hughes v. The Vermont Copper Mining Co., 72 N. Y. 207. In such case, the company has the right to regard him as having elected to rely upon his claim for damages, and to divide its profits among those who were recognized as shareholders. If he had elected to proceed to enforce his rights as a member of the corporation, and to implead the adverse claimants of the shares, the company may have refrained from declaring dividends on the shares in dispute, until the question of title was settled. But, if he brings his action for damages, it has the right to treat him as abandoning any claim for the specific shares, and reposing upon his right to compensation for their value in damages. The claims for such compensation, and for the current dividend, are inconsistent. Id.

In Manning, Bowman & Co. v. Keenan, 73 N. Y. 45, an action was brought for an alleged conversion of goods. The goods were sold conditionally to the vendee, who subsequently delivered them to plaintiff's agent, to be held as security for the purchase price. Plaintiff ratified the act of its agent. The agent thereafter, without the knowledge of plaintiff, delivered to the vendee a receipt for the goods, stating that they were received in store on account of the vendee, at a specified rate for storage. This receipt the vendee transferred to another party, upon an alleged sale of the goods for a valuable consideration. The plaintiff held the notes of the vendee given for the purchase price of the goods. In an action against it by the agent, the plaintiff set them up as a counterclaim, and recovered judgment for the amount. And it was held that this was not inconsistent with the idea of a conditional sale or of a pledge of the goods, and did not affect the plaintiff's right to resort to them to realize his claim.

Upon the failure of the vendee to perform an executory contract for the purchase of chattels, the vendor may elect to tender the property and sue for the contract price, or to retain the property as his own, and recover, as his damages for the breach, the difference between the market value at the time the vendee was to receive delivery, and the contract price. Bridgford v. Crocker, 60 N. Y. 627. If he elects the latter remedy, and the property subsequently rises in value in the market, the vendee cannot avail himself thereof, but the vendor is entitled to the benefit. Id.

Where a party has grounds upon which to bring different actions against different persons arising out of the same state of facts, and the maintenance of one necessitates the allegation of facts inconsistent with the maintenance of another action, the party is bound by his election, and cannot proceed against the other person, even though the judgment obtained fails to afford relief. Roberts v. Ely, 45 Hun, 590.

In this case, the plaintiff and one Geiger, purchased jointly of a tea company a quantity of tea, and paid for the same. The tea, at the time of the

purchase, was stored in the warehouse of the company. The purchasers requested the company to insure the tea for their benefit. The company promised to do so, and subsequently informed the purchaser that such insurance had been effected. But in fact it had not been done. The teas were left in the warehouse of the company, and had been separated and set apart from the balance of the stock. Subsequently all the teas in the warehouse were destroyed by fire, including also the tea in question. At the time of the fire, the insurance held by the company amounted to $70,000, all of which, by the terms of the policy, was made payable to David J. Ely, to whom the loss was paid. At the time of the receipt of the money, Ely had no notice of the plaintiff's claim made in this action. The company notified the plaintiff that it had not effected any insurance upon his teas for his benefit, and subsequently informed him of the collection of the insurance money, and offered to procure the payment to plaint_ iff and Geiger by said Ely of a sum of money, which bore the same proportion to the total amount received as the value of the teas in question bore to the value of all the teas destroyed by the fire. This offer the plaintiff refused to accept, and he and Geiger assigned their claim to one Albert P. Lewis, who thereupon brought an action against the company in the supreme court of the state of New York, and obtained judgment in his favor for $10,882.71. At the time of the assignment and of bringing the suit in question, the plaintiff was aware that the insurance money had been paid to Ely. Mr. Lewis subsequently assigned to the plaintiff the above mentioned judgment. After the death of Mr. Ely and after the rendition of said judgment, the plaintiff commenced the present action to recover from his personal representatives the insurance moneys received by him on account of the destruction of the teas belonging to plaintiff and Geiger. And it was held that the institution of the action against the company was an election to hold the company as insurers, and precluded an action against the executor of Ely. In case the plaintiff had been ignorant of the facts at the time they chose to hold the company as insurers, they might not be held to their election. But where it distinctly appears that he was made fully acquainted with all the facts prior to the assignment of the claim and the commencement of the action against the company, he cannot claim that Ely, who was a creditor of the company and had procured insurance upon this property before its sale to plaintiff and Geiger, in order to indemnify himself for the amount due him from the company, should account to the plaintiff for the insurance collected, simply because the latter cannot collect his judgment against his own insurers.

An owner of property who permits another to sell it, and who recovers a judgment against him for its value, cannot question the validity of the transfer. Howell *v.* Earp, 21 Hun, 393.

The cases of McElroy *v.* Mancius, 13 John, 121, and Brown *v.* Littlefield, 11 Wend. 467, to the effect that the selection and prosecution by a party of one of two or more remedies which are wholly repugnant, when

the choosing of one, is an abandonment of the other, estop the party from denying that he is bound by the selection, are distinguished in Becker *v.* Walworth, 24 Rep. 186. In this case, it was held that an action, brought originally against an executor as such, where the petition is amended before answer filed so as to charge the executor personally, was not such an election as to estop the plaintiff.

*Agency.*—In Mattlege *v.* Poole, 15 Hun, 556, an action was brought against both principal and agent, to recover the price for goods sold to the agent. The latter had promised payment without disclosing his principal, for whom the goods were bought, and by whom they were used. And it was held that the act of the plaintiff in suing both principal and agent did not constitute an election to hold the principal and discharge the agent; and that no legal proceeding short of judgment would have that effect.

· In Cobb *v.* Knapp, 71 N. Y. 348, an action was brought to recover for wheat alleged to have been sold by plaintiff to defendant. It was in fact purchased by the latter for third persons. The principal was not disclosed, though it was stated that the wheat was for the "Blissville Distillery," and was to be delivered there. The plaintiff did not know the proprietors of the distillery, but was subsequently informed as to the principal. And it was held that the subsequent disclosure of the principal by defendant, and the commencement of an action against him by plaintiff, were not conclusive of an election to hold the principal only responsible; but that the fact of commencing such action was proper to be considered by the jury on the question of knowledge as to the principal, though it did not operate as a legal discharge.

*Arrest.*—It was held in Wright *v.* Ritterman, 1 Abb. N. S. 428, that, where the plaintiff in an action on contract obtains an order of arrest, on which the defendant is taken, the latter's subsequent exoneration from imprisonment for debt, under the provisions of 2 R. S. 30, § 10, precludes the plaintiff from procuring a second arrest in an action sounding in tort, but founded on the same transaction as the alleged cause of action on contract. In this case, a fraudulent purchaser of goods, who had been sued on the contract of sale, and arrested in the action on the ground of fraud in contracting the debt, was held not to be liable, after he had been exonerated from imprisonment for debt, to arrest in a suit for damages for conversion of the goods.

So it was held, in the People *ex rel.* Ritterman *v.* Kelly, 1 Abb. N. S. 432, that after a defendant, arrested in a civil action, has been discharged from imprisonment under the statutes relating to insolvents, the plaintiff cannot, by merely changing a form of action to a suit for tort instead of a suit on contract, procure the arrest of the defendant in another court for the same cause, for the purpose of evading the force and effect of his discharge, and thereby defeating the clear intendment of the statute. And where the gist of the transaction is a tort, if it arises out of the contract, the plaintiff

may declare in tort or contract, at his election; but having made his election, he is bound by it.

It was held in Rockford, L. I. & St. L. R. R. Co., *v.* Boody, 56 N. Y. 456, that an order of arrest and a writ of attachment are not so inconsistent in their nature, that the allowance of both, in the same action, will render them both void.

Where sufficient property of a defendant has been attached to satisfy the plaintiff's claim, and an order of arrest, the propriety of which is questionable, has been issued, the plaintiff should be required to elect between the attachment and the order of arrest. Duncan *v.* Guest, 2 N. Y. C. P. 275.

In Rawson *v.* Turner, 4 John. 469, it was held that, if a new sheriff receives a prisoner from his predecessor, he is answerable for his escape, though a voluntary escape may have existed in the time of the former sheriff; but the plaintiff has his election, either to consider the prisoner in execution, and so charge the new sheriff for the last escape, or as out of execution, and charge the old sheriff. If he has once made his election, and sued the old sheriff and recovered judgment against him, it is conclusive, and a bar to any action against the new sheriff.

In Sanger *v.* Wood, 3 John. Ch. 416, it was stated by the court that any decisive act of the party, with knowledge of his rights and of the facts, determines his election in the case of conflicting and inconsistent remedies.

*Assignment.*—In Mills *v.* Parkhurst, 56 Hun, 640, a creditor of an assignor for creditors brought an action to set aside the assignment on the ground of fraud. He was defeated in the action and appealed, and such appeal is still pending. And it was held that, by bringing such action in hostility to the assignment, he made his election of remedies; and that, while actively pursuing such remedy, he could not be allowed to participate in a distribution of the assets under the assignment.

It is a familiar principle that, where a creditor has two remedies, one of which is inconsistent with the other, that he cannot prosecute both at the same time. In order that an election shall be final and conclusive, it is necessary that it should be made by a party having knowledge of all the facts affecting his rights. That the party has made a mistake in regard to the law as applicable to those facts does not in any manner affect the binding quality of an election once made. But, where facts come to the knowledge of the creditor which, if known at the time of the alleged election, would have compelled him to act differently from his real act, the cases hold that, upon a prompt rescission of that which had already been done, upon the discovery of this new condition of affairs, the creditor will not be held to the election so made. These principles are illustrated and enforced in the cases of Conrow *v.* Little, 115 N. Y. 387; Fowler *v.* Bowery Sav. Bank, 113 Id. 450.

It is also established that, where an election has apparently been made and proceedings in hostility to the general assignment have been undertaken

but nothing has been secured, nor profits gained by reason of the proceedings, and they have been abandoned, no binding election is held to have taken place. Mills *v.* Parkhurst, *ante.* In the latter case, the proceedings in hostility to the assignment, though unavailing to the creditor, have not been abandoned, but are being prosecuted, with full knowledge of the condition in which the prosecution of the suit places him in reference to his right to participate in the dividends declared under the assignment. There is no adjudication which holds or intimates that a party may be actively pursuing his remedies in one proceeding, and at the same time may claim the benefits of another, where the one is antagonistic to the other position.

Though the action to set aside the assignment has been appealed to the court of appeals, it is still pending, and the creditor is seeking to set aside the assignment, the benefits of which he is claiming before the court upon the present appeal. The mere fact that he is availing himself of the abstract right awarded him by law of seeking a review, in the court of appeals, of the final judgment of the general term in his action to set aside the assignment does not impair the binding force of that judgment or limit its scope or change the status of the parties. He cannot claim, and insist upon the claim, that the assignment in question is fraudulent and that, by reason of the filing of his bill, he is entitled to preference over all the other creditors of the assignor to payment out of the estate attempted to be assigned, and at the same time insist that he is entitled to share in the assets under the assignment.

The other creditors of the assignor, being parties to the action for an accounting of the assignee, and for a distribution of the assigned estate, have the same rights as any other person to contest and challenge the right that a part of the dividend due to them shall not be abstracted by a creditor who, because of his own action, has no right to avail himself of the benefits conferred by the assignment under which the creditors in general claim. There is no reason why any person who is interested in the question of distribution cannot enforce the election made by a creditor who has brought an action to set aside the assignment and is maintaining an appeal from the judgment therein.

Where a party has sued for the purchase price of goods and recovered judgment, he cannot subsequently maintain an action upon the ground that the goods were obtained from him by fraud; or, where the goods had been taken from the debtor by replevin or an action commenced for that purpose, the creditor cannot subsequently sue for the purchase price. Sternfield *v.* Simonson, 44 Hun, 429. But a mere ineffectual attempt upon the part of a creditor to secure his debt by legal proceedings does not preclude him from claiming the benefits as a creditor under a general assignment. Id. In fact, the case of Brown *v.* Littlefield, *ante,* clearly lays down the rule to this effect. At page 471 of that case it is said that, where a party has inconsistent rights or remedies, he may claim or resort to the

oneor the other at his election. He is frequently bound by some decisive act of election in favor of one right or remedy, from afterwards claiming the other right or pursuing the other remedy, in case they are inconsistent. But the mere attempt to pursue a remedy to which he is entitled, without obtaining any legal satisfaction therefrom, will not deprive him of the benefit of that to which he had originally a right to resort, especially where he has acted under a mistake as to the facts. Though an attachment has been issued but no levy has been made thereunder and no property acquired thereby, he is not deprived of his remedy under the general assignment. Sternfeld *v.* Simonson, *ante.* In this case, the debtor made a general assignment of all his property for the benefit of his creditors. The plaintiffs instituted proceedings in which the assignor was compelled to appear and be examined and produce his books and papers before a referee, and the assignee was compelled to give a bond upon which the defendant was one of the obligors. Subsequently the plaintiffs began an action against the assignor upon notes made by him, and procured therein an attachment against his property, upon the ground that the assignment was fraudulent and invalid, but no levy was ever made thereunder. A judgment was recovered in that action, and an execution was issued thereon, and returned *nulla bona.* The plaintiff then brought an action against the assignee for an accounting, which resulted in a judgment in his favor, and an execution was issued thereon and returned unsatisfied. Thereupon the plaintiff brought the present action against one of the sureties upon the assignee's bond. The complaint was dismissed upon the ground that the plaintiff had made an election between two inconsistent remedies, and that he was confined to the one he had first chosen. And it was held that such dismissal was error. If the plaintiff, by means of his attachment proceedings, has secured any of the property covered by the assignment, a different question may be presented. But where he has in no way interfered with the assigned property by his process, has acquired nothing by the proceedings, and has obtained no legal satisfaction therefrom, he is not deprived of the benefit of the right to which he may originally have resorted. The case of Iselin *v.* Henlein, 16 Abb. N. C. 79, proceeded expressly upon the ground that the attaching creditor seized and obtained possession of the assigned estate under his attachment; and in Rodermund *v.* Clark, 46 N. Y. 354, the decision was placed upon the ground that the plaintiff's assignor having retained possession of the property, he and his assignee were precluded from maintaining an action for its conversion.

A creditor with full knowledge of fraud in fact in the execution and delivery of a voluntary assignment by a debtor of his property, may elect to waive the fraud, acquiesce in and confirm the dispositions made thereby, and choose to take a benefit thereunder. Iselin *v.* Henlein, *ante.* In such case, he cannot afterwards, by action in a court of equity, move in hostility to the assignment, and seek to set it aside as fraudulent against creditors.

An election clearly and unequivocally made by a creditor of the assignor, to sustain the assignment, and to take benefits thereunder, with knowledge on his part that it is impeachable in a court of equity for fraud, is final and conclusive upon the creditor. Id. He by concurrence with, or acquiescence in, a voluntary settlement of real and personal estate, which is intended to hinder or delay creditors, may preclude himself from impeaching the deed. Id.

In this case, a creditor's suit was brought to avoid a general assignment made by the judgment debtors, on the ground of their fraudulently withholding a considerable portion of their estate from its operation.

Shortly after the assignment, the plaintiffs, with knowledge of the facts, entered into negotiation looking to a composition of the indebtedness. To that end, they signed a composition agreement. But before it had become perfected, they withdrew their consent, and, upon affidavit setting up the fraud, attached the assigned property in the hands of the assignee. They also subsequently moved in the assignment proceedings to remove the assignee and prove their debt, with an express qualification that they did not recognize the validity of the assignment. After the attachment was levied, the assignee claimed the property; but the plaintiffs gave a bond of indemnity, and the sheriff held on to the property. And it was held that the suing out of the attachment and the seizure thereunder were an election in hostility to the assignment, which necessarily defeated any subsequent steps in the opposite direction, and deprived them of the effect which they might otherwise have as a ratification of the assignment.

*Banks.*—In Fowler v. Bowery Savings Bank, *ante*, a person deposited a sum of money with defendant in trust for his wife. A pass-book was delivered to him. After the death of the husband and wife, letters testamentary on the wife's estate was issued to the plaintiff. Plaintiff called with them at defendant's bank and demanded payment of the deposit. One of its officers told him that it would be paid to him when he came with the pass-book. It was then in the possession of the husband's executor. Afterwards the latter presented the pass-book, together with proof of his appointment. Defendant thereupon paid the deposit to him on surrender of the pass-book. Plaintiff, after learning of the payment, brought suit against the husband's executor to recover the money so paid to him and recovered judgment therein, but was unable to collect the same. He then brought an action against the defendant to recover the sum deposited with the defendant and interest thereon. And it was held that, after his demand of the deposit, and the payment of the money to the husband's executor, there were two remedies open to the plaintiff; he could sue the defendant as a debtor for the deposit and recover the amount thereof from it, or he could bring an action for money had and received to and for his use, against the husband's executor and recover it from him. But he was not entitled to both remedies at the same time, or in succession; and by electing the one, he would lose the other. By electing to sue the bank,

he would repudiate the payment to the husband's executor, and his claim in such case would be that the debt had not, in fact, been paid. But by suing the husband's executor, he would adopt and ratify the act of the bank in making the payment to him, and his claim would then be that the money due to him had, in fact, been paid to the husband's executor, and that the latter had received it to and for his use. Such adoption and ratification of the payment would legalize it as between him and the bank, and thus discharge the bank. He could not occupy the position, at the same time, of claiming that the bank had paid his money to the husband's executor, and also that the bank was still his debtor. His election in this case to sue the husband's executor, and thus to treat him as his debtor, was not harmless to the bank, but in law may be presumed to have injured the bank, unless it should now be held to be discharged by its payment to the husband's executor. After the plaintiff commenced his action against the latter, and thus ratified and adopted the payment by the bank to him, the bank could not, during the pendency of that action, have sued the husband's executor to recover back the money on the ground that it had been paid by mistake and received by him without authority, because it would have been a defense to such action that the real owner of the fund had adopted and ratified the payment. But even though the mere commencement and pendency of the action by the plaintiff against the husband's executor would not have furnished such a defense, it is beyond doubt that, if the bank should, after judgment in that action, bring an action against the husband's executor to recover back the money, the latter could successfully defend, on the ground that the plaintiff had ratified and adopted the payment, and thus discharged the bank, by the recovery of a judgment against him for the money paid as the real owner thereof. Fowler *v.* Bowery Savings Bank, *ante.*

The two remedies, one against the husband's executor and the other against the bank were not concurrent. Even though the two actions might be prosecuted at the same time, they could not in succession.

Nothing could be more inconsistent than an action against the husband's executor, on the ground that money due to the plaintiff had been paid to him, and an action against the bank, on the ground that it had not paid the deposit and still remained debtor therefor. If the money had been absolutely the money of the plaintiff, left on special deposit with the bank, he could then have pursued the money wherever he could track it without losing his remedy against the bank. In such a case, the plaintiff will not be barred of his right of recovery against the bank, until he has either recovered his money or the value of the same. All his remedies, in such cases will be consistent, as they are based upon the theory of a wrongful disposition of his property. So, too, where a trustee, in breach of his trust, disposes of the trust property, the beneficiary of the trust may pursue it, or its proceeds, wherever he can trace them, so far as the law will permit him to do so, without relieving the trustee. All his remedies in

such case are consistent and based upon the same theory, to wit, a breach of trust; but where a trustee is bound to pay money to a beneficiary as a debt due from him to the latter, then if he makes payment to another person, he has not paid the debt, and the money paid is not, in fact, the property of the beneficiary. In such case, the latter may ignore the payment and sue the trustee as his debtor, or he may ratify and adopt the payment and sue the person receiving the money as his debtor, but he cannot pursue both remedies. There is in such case a breach of trust, or not, as he may elect, and his election, once effectually made, is conclusive forever.

If one wrongfully takes and sells personal property not belonging to him, the owner has the election to sue him for the proceeds, as money had and received to and for his use, and thus ratify the sale, or he may pursue the property and recover it or its value. But he cannot do both, and is bound by his election. Fowler *v.* Bowery Sav. Bank, *ante.*

In Adams *v.* Nat. Shoe & Leather Bank, 44 Hun, 629, it was held that, where one has obtained money fraudulently and deposited the same in bank on his own account, the bank will become liable to the rightful owner if it pays the balance or any part thereof to the depositor after having received notice of the claim. The notice will be sufficient, though informal, if it in fact put the bank upon its guard. The third parties receiving such money in good faith upon a precedent indebtedness will be protected. But if the money has been received after notice has been given of the claim, they will be equally liable with the bank. In such a case, it is error to compel the plaintiff to elect upon trial which one shall be held liable, as a recovery against one releases the other from liability.

In Riley *v.* Albany Savings Bank, 36 Hun, 513, one Patrick Flannigan accompanied by Patrick H. Riley and Margaret Smith, deposited in the defendant's savings bank $876.75 belonging to Mary Riley, to her credit, upon an agreement that the money should not be withdrawn, unless the three, who made the deposit, were present. But the money was paid to Flannigan during the lifetime of Mary Riley upon the production of the pass-book and the latter's check. Mary Riley subsequently died and Patrick H. Riley was appointed her administrator. He presented a verified petition to the surrogate, under § 2706 of the Code, charging Flannigan with having corruptly procured an order from Mary Riley, knowing her to be insane, and with having withdrawn the money from the bank, and further charging that he then had the same in his possession; and praying that he might be directed to surrender the possession thereof to the petitioner. Flannigan appeared on the return of this citation, and, upon his admission, a decree was entered directing him to deliver the same to the administrator. For his failure to comply therewith, he was committed to the county jail, where he remained until discharged therefrom by the surrogate, because of his inability, from sickness, to bear longer confinement. Subsequently the administrator brought an action against the

bank to recover the amount of the deposit. After its commencement, he died, and plaintiff was appointed administratrix and substituted in his place. And it was held that the plaintiff, by the procurement of a decree in the surrogate's court adjudging that the money in Flannigan's hands belonged to the estate of Mary Riley, ratified the act of Flannigan in withholding the money, and could no longer claim that the bank still owed to her the same money, or bring an action against it to recover the amount of the deposit. Such action is inconsistent with the proceeding had in surrogate's court against Flannigan. Those proceedings are just as effectual as a judgment against him would have been. It is plain that the administratrix cannot consistently have a judgment against the bank for the money deposited, and also against Flannigan for the same money. This is not the case of a specific thing which the plaintiff is endeavoring to recover; but it is only a debt which the bank either owes or does not owe; and, if Flannigan owes it, the bank does not.

Where there exists an election between inconsistent remedies, the party is confined to the remedy which he first adopts. In such case, the remedies are not concurrent, and after the choice between them is once made, the right to follow the other is forever gone. Rodermund *v.* Clark, *ante;* Sanger *v.* Wood, 3 John. Ch. 416; Borell *v.* Newell, 3 Daly, 233; Scarf *v.* Jardine, 7 Ap. Cas. 345; Morris *v.* Rexford, 18 N. Y. 552; Kennedy *v.* Thorp, 51 Id. 174; Bank of Beloit *v.* Beale, 34 Id. 473; Riley *v.* Albany Savings Bank, *ante.* If, in the last case, the bank had been the bailee of some specific property of Mary Riley, and had wrongfully delivered such property to Flannigan, then it would not be inconsistent for the bailor to seek to recover the specific article from Flannigan, and to sue the bank for the breach of the bailment. In such case, the wrong done to the bailor by the bank would have consisted in the wrongful delivery of the article to Flannigan. But under the existing facts there was no bailment, but only a simple indebtedness on the part of the bank to Mary Riley. The payment of certain money to Flannigan by the bank was no wrong to her, for the bank paid its own money and not hers to Flannigan. Whether such payment to him would discharge the debt to her depends on one of two things: first, that he was authorized to receive it at the time; or, second, that she subsequently ratified his act. In the latter case, she elected to hold Flannigan liable as for money received to her use. This is the election of a remedy entirely inconsistent with an action against the bank being still as her debtor.

*Devisees.*—In Haack *v.* Weicken, 42 Hun, 486, an action, was brought to reform a deed executed to the plaintiff's husband, pursuant to an agreement for the partition of lands devised by the plaintiff's father to his four children. It was shown upon the trial that the intention was that the property described in the deed should be conveyed to the plaintiff and her husband, and that the latter should pay ten thousand dollars to another devisee. But, by the directions of the plaintiff's husband, the deed was

made out so as to convey the whole of the property to him.   This fact was not known to her or to the grantor, or to the other parties to the partition agreement, until after the death of the husband, which occurred several years after his receipt of the deed.   The husband left a will by which he devised to plaintiff a dwelling-house and property, together with the sum of $10,000, and declared these provisions to be in lieu of dower.   He gave the residue of his property to his brother and two sisters.   After the plaintiff had learned that her name had been omitted from the deed, she received, under the provisions of this will, a number of payments of portions of her legacy, also kept possession of the dwelling-house devised to her, demanded that the executor should proceed and pay off a mortgage existing thereon as a debt of the estate, and delayed for a considerable period of time to commence proceedings to reform the deed.   It was held that this state of facts put her to her election whether to take under the will or to pursue her remedy by a reformation of the deed; and that the case was one in which she must be held to have elected, and thereby to have created an equitable estoppel to the prosecution of an action to reform the deed.   See Havens *v.* Sackett, 15 N. Y. 365.   In this case the rule was stated as follows: " One who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all of its provisions and renouncing every right inconsistent with it.   For example, if a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee, accepting the benefit so given to him, must make good the testator's attempted disposition."

It is a well settled principle of law and equity, where a testator devises and bequeathes portions of his property to a beneficiary under his will, and also by his will devises and bequeathes a residuary estate to other beneficiaries, which necessarily embraces the property claimed by him, but in which the former beneficiary owns, or claims to own, an interest, that the acceptance by such beneficiary of the provisions of the will, with knowledge of the fact that the testator has thereby disposed of the property in which he claims an interest, will be held to be an election by him to take under the provisions of the will instead of asserting and pursuing a claim to the property devised or bequeathed to the residuary legatee.

Where a person insists on retaining his own property which the testator has attempted to give to another person, equity will appropriate the gift made to him for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of his rights.   Havens *v.* Sackett, 15 N. Y. 365.   If the parties have done nothing to preclude themselves —and the court will not consider anything done in ignorance of their rights as binding them—the party whose property has been given to another, will be put to his election, either to take what is offered to him in the instrument, yielding up to the party, who would otherwise be disappointed, his own property, or to keep what was his own, abandoning the provision made for him in the instrument.   Id.   But in order to furnish a case for

compelling an election, it must appear clearly and certainly that the interest attempted to be disposed of was such as the testator did not own. A person, it is said, is not to be understood, without strong indication of such an intent, as dealing with that which does not belong to him. Id.

One who elects to take a benefit under a will, must adopt it as a whole, and renounce every right inconsistent with it. Shipman *v.* Montgomery, 63 N. Y. 221. But an infant is incapable of making an election between a provision made for him by will, and his rights in opposition to it; and a guardian *ad litem* cannot bind him by making such election. Id.

*Fraud.*—Where property is tortiously or feloniously taken, the title does not pass, and the owner is entitled to reclaim it wherever it can be found. This rule does not, however, apply to cases where the possession of property has been acquired by purchase and delivery. There are quite a number of cases which seem to assert a contrary proposition, and there is a great degree of looseness of expression and carelessness of statement in laying down the rules applicable to cases of fraudulent sales. Fraud vitiates *ab initio* all contracts, at the instance and direction of the party defrauded, so far that the contract cannot be set up or urged against it. Stevens *v.* Hyde, 32 Barb. 171.

A contract tainted with fraud, as to the injured party, is as no contract, but as against the party committing the fraud and all other persons, it is universally held to be a valid contract. It may perhaps be said of every contract infected by fraud, as of contracts infected with usury, that it is an avoidable, but not a void, contract. When there is a contract of sale and an actual delivery pursuant to it, a title to the property passes, but voidable and defeasible as between vendor and vendee, if obtained by false and fraudulent representations. The vendor can reclaim his property as against the vendee or any person but a *bona fide* purchaser, without notice of the fraud. But if the party defrauded in such case would disaffirm the contract, he must do so at the earliest practicable moment after discovering the deceit. With property acquired under a contract of sale when the delivery is unconditional, or by a conveyance, the title passes and remains in the vendee, voidable at the election of the vendor, until parted with to a *bona fide* purchaser, subject of course to the qualification that the fraud may be waived, and will be deemed waived, if the right of election to rescind the contract is not exercised promptly, or within such period as to preclude the implication of consent to the contract, after the discovery of the fraud. Stevens *v.* Hyde, *ante.*

This election, when distinctly and definitely made, cancels the contract *in toto*, if the vendor is right in his assumption of the fraud, and restores him to his original title as general owner of the property. It puts an entire and absolute end to the contract, to the same effect as though no contract had been made, and leaves the parties in their original position in respect to the title. Id. Where nothing has been received by the vendor towards the purchase of the goods in question, notice of the election to rescind the con-

20

tract and the sale, with a demand of the property, will entitle him to re-claim it of the vendee, or any other person than a *bona fide* purchaser; but he cannot reclaim it without such notice and demand. Id. No man can be subjected to an action in respect to personal property in his possession, received by delivery, without personal wrong on his part, until he has re-fused to deliver it, upon a lawful demand, to the true owner. Id. Morris *v.* Rexford, *ante;* Ely *v.* Ehle, 3 N. Y. 506; Fuller *v.* Lewis, 13 How. 219. But where anything has been paid by the purchaser, the vendor must re-store it, or offer to restore it, before he can claim to have the contract of sale rescinded; and he must keep his tender good. In Wheaton *v.* Baker, 14 Barb. 594, a number of stoves were sold and part of the price paid in the notes of third persons. The vendee sold part of the stoves before the vendor elected to rescind. The latter did not tender the notes received nor produce them on the trial, but claimed the right to retain them to indemnify himself for the stoves sold. The court held that this was inadmissible, and that the contract was not rescinded.

In Voorhees *v.* Earl, 2 Hill, 288, the plaintiff purchased a number of barrels of flour. Part of them proved bad. He offered to return them, and demanded back the purchase money. The court held that he must rescind *in toto*, and could not affirm the contract in part and rescind in part.

In Matteawan Co., *v.* Bentley, 13 Barb. 641, some machinery was sold, part of the price paid, and the vendor claimed to rescind and recover the machinery without offering to return the money received. It was held that this could not be done.

But in Ladd *v.* Moore, 3 Sandf. 589, a person who sold goods and received part cash in hand, was allowed to recover in trover of the fraudulent vendee for the balance of the purchase money as upon a rescission of the contract. The case did equity between the parties, but it rests upon no principle.

In these cases of the rescission of contracts by the acts of the parties, the party, seeking to rescind, acts upon his strict legal rights, and there is no rule which allows him to keep back any part of the consideration received. Even though the vendee has sold more of the goods in value than the amount of the purchase price received by the vendor, yet, on the rescission of the contract, the title of the goods unsold becomes and is reinvested in the vendor, and the title to the money in the vendee; and there is no way of adjusting the equities between the parties, on the trial of an action at law, or of making equitable terms on the trial of an action of replevin for the goods. Where the action is in equity, and the plaintiff seeks a rescis-sion through the action of the court and offers to do equity, the court may take into consideration the situation of the property, the amount thereof sold by the vendee and the amount of consideration received by the vendor, and can do complete justice to the parties upon the whole case and in view of all its circumstances. Stevens *v.* Hyde, *ante.*

Where the vendor has received nothing on the sale, or afterwards, towards

the purchase of the goods, he has nothing to restore on the rescission of the contract. In such case, all that it is necessary to do to entitle him to reclaim his property, is distinctly to assert the right to rescind the contract for the fraud and to demand the goods. If the contract is upon credit and the property absolutely delivered, the contract of sale is merely voidable and passes the title, which remains in the vendee till the vendor elects to disaffirm it, as he has a right to do, within a reasonable time after the discovery of the fraud, while it remains in the hands of the vendee or at any time before it has passed to a *bona fide* purchaser. Bliss v. Cottle, 32 Barb. 322.

In Masson v. Bovet, 1 Denio, 73, it was held that a person, who is induced to part with his property on a fraudulent contract, may, on discovering the fraud, avoid the contract and claim a return of what he has advanced upon it. If he would disaffirm the contract, he must do so at the earliest moment after discovering the cheat. That is the time to make his election, and it must be done promptly and unreservedly. See Lloyd v. Brewster, 4 Paige, 540; Knowles v. Bigelow, 12 Pick. 312. The defrauded vendor has the right to follow his property and to reclaim it in whose hands soever he may find it, on a proper notice of the fraud and a demand thereof, at any time before it has gone into the hands of a *bona fide* purchaser. Bliss v. Cottle, *ante.* Until such election is made, the vendor has no right of action against a general assignee of the fraudulent vendee, and the latter is not liable for a conversion of the property. A rescission or disaffirmance of the contract by the vendor in person, or expressly authorized by him should precede the demand, of the property. Before such election to disaffirm, distinctly made and notified to the assignee, he cannot be guilty of the conversion of the property, where he is not a party to or cognizant of the fraud. Id.

Where the purchaser of the chattel, in an action brought against him by the vendor, upon the note given for the price, sets up as a defense the fraud of the vendor, upon the sale, but afterwards, and before any adjudication thereon, withdrew the defense, it was held that the suit brought upon the note was not a bar to a subsequent action, brought by the purchaser against the vendor, to recover damages for fraud on the sale. McDonald v. Christie, 42 Barb. 36. A purchaser may, in such a case, elect whether he will recoup his damages when sued upon the note, or bring his cross action and recover therein for the alleged fraud. Id. It is only where the remedies are not concurrent that the choice of one of them operates as a disaffirmance of the other remedy. The remedies by action for the alleged fraud, and by interposing a defense in a suit upon a note for the purchase price, are not conflicting or inconsistent, but are specially sanctioned by repeated adjudications. Id.

A vendee of real estate, who is induced to purchase by means of false representations, has an election of remedies; he may rescind the contract, and, after an offer to reconvey and a tender of what has been received,

recover back the consideration paid. Krumm v. Beach, 96 N. Y. 398. But he has a right, instead of rescinding the contract, to stand upon it, and require of the vendor its complete performance, or such damages as will be the equivalent of that complete performance. After acting honestly on his own part, he is entitled to the full fruit of his bargain, and cannot be deprived of it by the fraud of the vendor, without his own consent. It has been repeatedly adjudged that such an action, proceeding upon an affirmance of a contract actually made, founded upon actual fraud, and asking damages in the room of an impossible specific performance, can be maintained at law. Id.; Wardell v. Fosdick, 13 John. 325; Culver v. Avery, 7 Wend. 386; Whitney v. Allaire, 1 N. Y. 305; Clark v. Baird, 9 Id. 197; Graves v. Spier, 58 Barb. 385, and this is so whether the representations relate to the title, or to matters collateral to the land. Id.

In Boots v. Ferguson, 46 Hun, 129, an action was brought to recover damages for the alleged conversion of lumber and timber. The defendants were commissioners of highways. They entered into a written contract with one Conley, to build a bridge for the sum of $1,000, to be paid for when finished and accepted by the commissioners. Conley assigned the contract to the plaintiff. The latter furnished the material and constructed the bridge within the specified time. The commissioners refused to pay him therefor, and he thereupon brought an action against them individually to recover the contract price. The defendants obtained judgment upon the ground that they were not liable individually. This judgment was subsequently affirmed in the general term and court of appeals. Thereafter the commissioners caused the bridge to be taken down, and the material composing it was by them sold and carried away. The plaintiff afterwards brought another action against the highway commissioners for the contract price of the bridge, and judgment was rendered in favor of the defendant upon the ground that the claim was barred by the statute of limitations. Subsequently the present action was brought for the conversion of the material composing the bridge, and upon the trial the court directed a verdict for the defendant. Upon appeal to the general term, it was held that the commencement of the action against the commissioners for the contract price of the bridge, and its prosecution to judgment, constituted such an election of remedies as to prevent the plaintiff from maintaining an action for the conversion of the property. Riley v. The Albany Savings Bank, 36 Hun, 513; Bank of Beloit v. Beale, ante; Kennedy v. Thorp, ante; Fields v. Bland, 81 Id. 239; Wright v. Pierce, 4 Hun, 351; Sanger v. Wood, 3 John. Ch. 416; Morris v. Rexford, ante; Rodermund v. Clark, ante.

The rule of election of remedies does not alone obtain in the case of sale of goods where the title passes, subject to be defeated for fraud, or where the plaintiff has obtained possession of the property or some benefit to himself in relation thereto, either by judgment in his favor or by the enforcement of the provisional remedy in the action. In the case of Rodermund v. Clark, ante, it was held that a joint owner, having elected to assert his

rights by retaining possession and refusing to recognize the sale, was precluded from maintaining an action for the conversion; that the sale as to him was not valid and he had the right to retain his possession of the sloop, and could have defended that right in the court in which the vessel had been libeled, and that he could not, after having asserted his rights by retaining possession, abandon the same and submit to a judgment by default, and then retain his right of action for a conversion; that the two remedies were inconsistent and not concurrent.

In the case of the Equitable Foundry Co. *v.* Hersee, 33 Hun, 169, the court said: " The action being upon the contract would doubtless have been conclusive evidence of an election to affirm the same, if it had proceeded to judgment, even if the judgment had been adverse to the plaintiff." In this case the plaintiff, after discovering the fraud, discontinued his action upon the contract and did not proceed to judgment thereon. The court of appeals, in affirming the judgment of the general term in this case, 103 N. Y. 25, held that the mere bringing of an action for the price of goods sold is not a binding election of remedies or a waiver of the right to rescind the sale on the ground of fraud, unless the action was brought with knowledge of the fraud. In order to constitute a binding election, therefore, there must exist a knowledge of the facts upon which the inconsistent remedies may be founded.

In the case of Stowell *v.* Chamberlain, 60 N. Y. 272, an action was brought to recover the value of some United States bonds, which had been received and sold by the defendant as agent of the plaintiff. The defendant pleaded a former judgment in bar. The former action was for the wrongful conversion of the same bonds, the complaint therein alleging that they were the property of the plaintiff, and were loaned by him to the defendant, who, without his consent, sold, transferred and converted the same. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and final judgment was entered thereon. Upon appeal, the only question discussed was as to whether or not the former judgment was *res adjudicata* and a bar to the subsequent action. But the question as to whether the remedies were inconsistent and as to whether there had been an election between them was not raised or discussed.

After a vendor has made a valid election to avoid a sale, and has asserted his title to the goods by bringing an action for their conversion, the contract of sale is at an end. Upon establishing the fraud, neither the vendee nor any purchaser from him, other than *bona fide* purchasers, can claim any title under the sale, and the right of action of the vendor against the vendee upon the contract is gone. Kinney *v.* Kiernan, 49 N. Y. 164. No subsequent act of the vendor alone can revive the contract or the right of action thereon, which has thus been destroyed. Morris *v.* Rexford, *ante.* The rights of all the parties have become fixed and are the same as though there never had been any contract of sale, but the goods had been tortiously obtained

by the vendee. The mere bringing of an action upon the original contract against the vendee, after such an avoidance of the sale, does not affect the rights of subsequent purchasers. The vendee has a perfect defense to the action on the contract. The recovery in such an action against the vendee might have the effect of changing the title to the goods, the same as a recovery in trover would have; but the simple institution of the action will not produce such a result. It cannot operate as an election which will debar the vendor from prosecuting his action for conversion, where the right of election no longer exists at the time the action on contract is brought. The institution of a fruitless action, which the vendor has not the right to maintain, will not preclude him from asserting the rights he really possesses. In Morris *v*. Rexford, *ante*, the case turned upon the point that, at the time of bringing the replevin suit, the vendor had the right to reclaim his goods, and that, therefore, he was bound by his election so to do, and could not, after such election, sue upon the contract of sale; and it was expressly held in that case, that if, upon a second trial, it should appear that the vendor had not such right of election at the time of bringing the replevin suit, the latter suit would not interfere with his right of action on the contract. From the principles laid down in this case, it necessarily follows that the mere bringing of an action on the original contract, after the contract had been annulled, cannot affect the action for conversion.

After the contract of sale has been destroyed by the exercise of the vendor's right to avoid it, it is necessary, for the purpose of transferring to or vesting in the vendee a title to the goods which will inure to the benefit of the vendee's subsequent purchasers, either that there shall be a recovery by the vendor against the vendee, for the value of the goods, including those which have been delivered to such purchasers, or that some new contract shall be made by the vendor with the vendee embracing the same goods.

The receipt by the vendor from the vendee of compensation in any form for the part of the goods only, which the vendee has retained, will not affect the title to the residue, or an action then pending against him, or purchasers from him, for the conversion of such residue. After the old contract is rescinded, it is past ratification, and the time for election has passed by. The doctrine that a ratification or affirmation of a contract in part operates as a ratification of the whole, is no longer applicable to such a case. Kinney *v*. Kiernan, *ante*.

In Moller *v*. Tuska, 87 N. Y. 166, the plaintiff brought an action to replevy on the ground of fraud, goods sold by them. They afterwards proved their claim in bankruptcy and received a dividend, but the money paid was subsequently refunded to the assignee. The court held that, as the plaintiffs had once elected to disaffirm the sale, they could never afterwards successfully assert a claim against the purchaser on the contract; and that the subsequent transaction with the assignee in bankruptcy had no bearing

on the question, because the plaintiffs were then bound by their previous election. Rodermund v. Clark, ante. If a man once determines his election, it shall be determined forever. Thompson v. Fuller, ante.

In the latter case, an action was brought to recover for goods sold by plaintiffs to the defendants. An attachment was obtained on the ground that the defendants had assigned their property with the intent to defraud creditors. The affidavit on which the attachment was obtained, stated that plaintiffs were induced to make the sales by fraudulent representations. After the sales they had brought a replevin suit to recover such of the goods as remained in defendant's possession, and not transferred by them. They recovered about $900 in value of such goods. It was held that the plaintiff had elected to rescind all of the sales and to treat the goods sold as being still their own property just as though there had been no sale but only a tortious taking; by retaking the goods or any part of them they asserted that the goods were still their own and disaffirmed the sales altogether. They had no right of action on the alleged contracts of sale, as such contracts do not exist.

In Wile v. Brownstein, 35 Hun, 68, it appeared that, between Sept. 13, 1882, and Nov. 3, 1882, the plaintiffs sold and delivered, upon credit, to the defendant, goods to the value of $882.50, and on Nov. 30, brought an action to replevy the goods, upon the ground that they were obtained by a fraudulent representation and with an intent to cheat and defraud them. In this action goods to the amount of $380 were replevied and delivered to the plaintiffs; but the remainder had been previously sold by the defendant. The latter served an answer denying the fraud; and the plaintiffs thereupon served a notice, as provided in § 1719 of the Code, whereby they abandoned so much of their claim in the replevin action as related to the goods not replevied. Afterwards, and during the pendency of the replevin action the plaintiffs brought the present action to recover the value of the goods not replevied, alleging the bringing of the action of replevin and the abandonment of a portion of the claim therein made. And it was held that the present action could not be maintained; and that, as the plaintiffs had elected to disaffirm the contract and bring an action for conversion, they could not thereafter affirm the contract in part and sue thereon.

If they were induced to sell their goods to the defendant by his fraudulent representations they had a single cause of action; they were at liberty to elect, either to affirm the contract, waive the tort and recover the contract price, or to disaffirm the contract, sue in tort, recover such of the goods as could be replevied, and damages for the conversion for such as could not be replevied. They elected to disaffirm the contract by bringing an action for the conversion and claiming a return of the goods or their value in case a return could not be had.

No authority can be cited authorizing a plaintiff, after electing to sue in tort for a whole cause of action, and while the action in tort is pending, to

divide his cause of action into two parts and maintain a second action on the contract for the recovery of the other part.

The seller who brings replevin thereby disaffirms the sale, and cannot claim, under the buyer's assignment for the benefit of creditors, either for the price as a debt, nor for liquidated damages in tort.  Sweetser *v.* Smith, 22 Abb. N. C. 319.   By proceeding with an action of replevin, he disaffirms the contract of sale, and cannot cl.im to be a creditor entitled to bring an action to preserve the assigned property in aid of the assignment.   Morris *v.* Rexford, *ante ;* Kinney *v.* Kiernan, *ante ;* Moller *v.* Tuska, *ante.*   The case of Powers *v.* Benedict, 88 N. Y. 605, merely holds that, by bringing one replevin suit, a party is not precluded from following property or its proceeds, not taken on the process in the first suit, into the hands of other persons, and that an action for damages or in trover will lie for the value of untaken property.   The reference made to proof of claims in that case, as not affecting the right of the plaintiff to maintain that particular action, must be understood as relating only to the terms of the national bankrupt act, which by an express provision permits proofs of claims for damages for conversion, etc.

It is well settled that, when a contract is induced by fraud, this fact does not render it void, or prevent the property from passing, but gives the defrauded party a right, on discovering the fraud, to elect whether he will continue to treat the contract as binding, or disaffirm it and resume his property.  Powers *v.* Benedict, *ante.*   The contract then continues until the party defrauded has determined his election by avoiding it, and when once rightfully determined, it is determined forever.   Id.; Moller *v.* Tuska, *ante ;* Morris *v.* Rexford, *ante.*

The bringing of an action, in such case, to recover the property with damages for its detention, is undoubtedly an election to disaffirm the contract and reclaim the goods.   So far as the goods are retaken under process in the action, it is a final and conclusive election.   A recovery cannot afterwards be had, either for the price agreed to be paid for that part, or their value.   But this is not a bar to an action for the price or value of the goods not retaken in the replevin action.   The vendor, by an effort to retake his entire property, if successful in part only, does not lose the right to pursue the original wrongdoer for the value of the unfound portion. Powers *v.* Benedict, *ante.*

Nor is his effort to do so an answer to an action against one in whose hands is found the unclaimed portion.   Where a wrongdoer carries away a hundred bags of grain, and the owner recovers fifty by legal process from one who received it without consideration, and whose title is, therefore, no better than that of the trespasser, he does not thereby lose his right to recover the value of the remainder.   Id.  And he is not bound to restore the fifty in order that the latter action can he maintained.   Id.; Kinney *v.* Kiernan, *ante.*   So the subsequent effort of a vendor to obtain, in bank-ruptcy, compensation for the unfound portion of his goods, is no obstacle

to a recovery against a third person for so much of the fruits of the fraud as are found in his hands. Id.

In Hersey v. Benedict, 15 Hun, 282, an action of replevin was brought to recover goods in the hands of the sheriff, seized by him under executions against the vendee who purchased the goods from the plaintiffs by means of false and fraudulent representations, and with intent not to pay for them. After the commencement of this action the plaintiffs began suit against the vendee in what would formerly have been known as an action on the case for deceit, in which the purchase of the goods was alleged to have been made by means of false and fraudulent pretenses, and damages were claimed; but this suit did not proceed to judgment. And it was held that the commencement of the latter action could not be available as a defense to this action. It was commenced subsequently and after the cause of action in this suit had accrued; and further that action did not proceed on the ground of affirming, but was in disaffirmance of, the contract of sale. See Miller v. Barber, 66 N. Y. 558; Hubbell v. Meigs, 50 Id. 487; Lexow v. Julian, 6 W. Dig. 508. A vendor, having disaffirmed the sale, may reclaim such of the goods sold as are within his reach; and, when some have been placed beyond his reach, sue the vendee in an action to recover damages for the fraud.

The commencement of an action by the vendor against the vendee for the price of goods sold and delivered is a clear waiver of the right of the vendor to reclaim said goods, and an election or evidence of an election to treat the sale as absolute. Wright v. Pierce, 4 Hun, 351. An election of one of two inconsistent remedies, whenever made, is final and conclusive upon the party. Morris v. Rexford, ante; Rodermund v. Clark, ante; Bank of Beloit v. Beale, ante.

The commencement and prosecution of an action to recover the price of goods sold, and the issuing and seizure of the vendee's property under an attachment granted in such action, which result in no possible benefit to the vendor, do not constitute such an election of remedies as will afterwards preclude another suit brought, after the first has been discontinued, to recover the possession of the property on the ground of fraud, where it does not appear that the first action was brought with a knowledge on the part of the vendor of the existence of the fraud. Bach v. Tuch, 47 Hun, 536; Equitable Foundry Co. v. Hersee, ante; affirmed 103 N. Y. 25; Acer v. Hotchkiss, 97 Id. 395; Hays v. Midas, 104 Id. 602.

After a vendor, from whom goods have been obtained by fraud, instead of disaffirming the contract of sale, affirms it by bringing suit thereon and prosecuting it to judgment, neither he nor a receiver, appointed in supplementary proceedings instituted upon such judgment, can set up the fraud in the sale, for the purpose of defeating the assignment of the property made by the vendee for the benefit of creditors, even though the assignment was made in furtherance of the fraud, with full notice thereof upon the part of the assignee. Kennedy v. Thorp, ante. The vendor

has the right to disaffirm the contract and retake the goods or sue for their wrongful conversion, not only while they are in the hands of the vendee, but in the hands of any party who receives them with knowledge of the fraud by which the vendee obtained possession of them, or to affirm it by suing for goods sold and delivered.   But the remedies are not concurrent; and when the vendor has once made his choice between them, he has lost the right to follow the other remedy.   Id.;  Morris v. Rexford, *ante ;* Bank of Beloit v. Beale, *ante.*   After the vendor has affirmed the sale by pursuing his remedy upon it to judgment, as a valid contract, he cannot, if the goods remain in the vendee's possession, retake them or maintain an action against him for wrongful conversion, or against a subsequent purchaser, even through he may have received them with full notice and in furtherance of the fraud.

In Morris v. Rexford, *ante,* an action was brought for goods sold and delivered.   The plaintiff negotiated for the sale of them with the defendant and one Campbell, and sold them to one or the other.   The plaintiff's evidence tended to prove a sale to the defendant, while that on the part of the defendant tended to prove a sale to Campbell, under an arrangement by which the defendant was to assist him in paying for them.   After the goods were delivered, the plaintiff called on the defendant, and also on Campbell, for payment.   The defendant declined paying anything without seeing Campbell, and the plaintiff, after waiting two weeks, brought two actions of replevin for the goods.   In the present action, the defendant offered in evidence the writs of replevin and the proceedings under them, in bar of the plaintiff's action, and as evidence that there had been no sale and legal delivery of the goods.   And it was held that the replevin actions constituted a disaffirmance of the sale, and were evidence in bar of a subsequent action for the purchase money.   If the vendor had a right to disaffirm the delivery, that right was effectually asserted by the issuing of writs of replevin and by causing the property to be taken and delivered on those writs.   These proceedings amounted plainly to an election between inconsistent remedies; and if the right of election existed, the effect was to confine the vendor to the remedy which he then preferred and adopted. A vendor of goods, on a sale and delivery upon cash terms, if he fails to get payment, may consider the delivery absolute and rely on the responsibility of the vendee, or he may disaffirm and reclaim his property.   But he cannot do both of these things, as the remedies are not concurrent.   The law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them, and an action by the same person, founded on the sale and delivery of the same goods, for the recovery of the price.   In peculiar circumstances, a party may take either of these courses, but having rightfully made his choice, the right to pursue the other is extinct and gone.   Littlefield v. Brown, *ante ;* 7 Id. 454; 11 Id. 467; McElroy v. Mancius, 13 John. 121; Sanger v. Wood, *ante ;* Butler v. Miller, 1 N. Y. 496.

In Rodermund v. Clark, *ante,* the defendant and one Ward were joint

owners of a sloop. The defendant ignored Ward's rights and sold the whole vessel to one Malcolm. Ward, after the sale, took and retained possession. Malcolm thereupon libeled the vessel as owner in the United States District Court, and she was seized by the marshal and taken from Ward. Malcolm obtained a judgment in that proceeding by default, and the marshal delivered the vessel to him. The default was subsequently opened, but Malcolm retained the vessel, and she never came back to the possession of either Ward or the plaintiff. Ward assigned his interest, and also his claim against defendant, to plaintiff, who commenced the present suit against the defendant to recover damages for conversion of the vessel. And it was held that Ward, having elected to assert his rights by retaining possession and refusing to recognize the sale to Malcolm, was precluded from maintaining an action of conversion, and that the assignee only obtained the rights of his assignor in the property. When the defendant sold the whole of the sloop to Malcolm, thereby ignoring the rights of Ward in her, his act authorized the latter to sue for a conversion of the property; White *v.* Osborn, 21 Wend. 72; Dyckman *v.* Valiente, 42 N. Y. 549; and such is the case, although the sloop was not put beyond the reach of Ward. White *v.* Osborn, *ante.* Ward then had two courses, either of which he might pursue. He could sue the defendant for the conversion, or he could assert his right of possession, by keeping a permanent possession, or regaining possession, if it was interrupted. The effectual taking of either of these two courses precluded him from taking the other course. Rodermund *v.* Clark, *ante.* Any decisive act of the parties, with knowledge of his rights and of the facts, determines his election in the case of conflicting and inconsistent remedies. Id.; Morris *v.* Rexford *ante;* Sanger *v.* Wood, *ante;* Littlefield *v.* Brown, *ante;* affirmed, 11 Id. 467.

In Fields *v.* Bland, 81 N. Y. 239, an order of arrest was granted on an affidavit showing that certain personal property belonging to the plaintiff had been entrusted to one of the defendants, upon her agreement that she and the other defendant would sell it for the plaintiff and account to him for the proceeds. Instead of doing this they secreted and took it away. After the property had gone into the possession of this defendant, the plaintiff accepted from her a confession of judgment. The statement upon which the judgment was rendered declared that the property was sold and delivered to her, and that for its value she was indebted to plaintiff. The plaintiff, after the facts alleged to show conversion were known to him, issued an execution upon said judgment and collected a part thereof. On motion to vacate the order subsequently made, plaintiff in opposition claimed that the judgment was taken as security merely; but it was held that the judgment was conclusively upon this question; that, by accepting and enforcing it by execution, he must be deemed to have made his election to treat the property as that of the judgment debtor under a sale from him, and that he could not subsequently change his ground.

When a party has been induced by fraud to enter into an executed con-

tract for the purchase of property, he may, upon discovering the fraud, prosecute one of two classes of remedies. Bowen v. Mandeville, 95 N. Y. 237. He may rescind the contract, and after restoring to the other party whatever may have been received thereon, sue for and recover ·back the entire consideration paid by him; or he may retain what he has received and sue for and recover such damages as he can establish to have been occasioned by the fraud. Id. Lloyd v. Brewster, 4 Paige, 537; Bank of Beloit v. Beale, ante; Rodermund v. Clark, ante. But, since these remedies are inconsistent, they cannot both be prosecuted and maintained at the same time. One proceeds upon the theory of a rescission of the contract, the other upon its affirmance; and the election to pursue one constitutes the rejection of the right to adopt the other remedy. A party may, however, prosecute as many remedies as he legally has, provided they are consistent and concurrent. Morgan v. Skidmore, 55 Barb. 263; affirmed, 3 Abb. N. C. 92; Wanzer v. DeBaun, 1 E. D. Smith, 261; Goldberg v. Dougherty, 39 Supr. 190; Whitney v. Allaire, 1 N. Y. 312; Corn Exchange Ins. Co. v. Babcock, 8 Abb. N. S. 257; Bowen v. Mandeville, ante.

In the last case above cited, an action was brought to recover damages for an alleged fraud by which plaintiff's testator was induced to purchase a bond and mortgage of defendant. Prior to the commencement of the action, the testator had recovered two judgments against defendant for installments of interest falling due on the bond in actions upon a guarantee of payment contained in the assignment of the security. And it was held that the present action was not inconsistent with those heretofore brought by the plaintiff, in which judgment had been recovered upon the guarantee executed by defendant. All of the actions proceeded upon the theory, on the part of the plaintiff, of an affirmance of the contract of sale. Though they differ in form, one does not allege what the other denies. Yet while they are consistent, they are not identical, and a recovery in one does not constitute a bar to a recovery in the other action. One proceeds upon the theory of a tort, and the other upon contract; and the rule upon which damages are awarded is different in the two cases. In the one case it is governed bhtey amount stipulated in the contract, and in the other by the difference between the value of the property as represented upon the sale and its actual value. Still, all the remedies proceed upon the theory of an affirmance of the contract, and were consistent and concurrent. Had the former judgments been for the whole amount guaranteed, it may be that a different question would have been presented. The plaintiff was entitled to but one satisfaction of the whole damage sustained; and, when this was obtained, all of the judgment would have been ordered satisfied.

In the Bank of Beloit v. Beale, ante, a vendor, who had been defrauded in the sale of his goods, proceeded, after being fully apprised of the fraud, to judgment against the vendee upon the contract of sale; and it was held that his election was determined, and that he could not afterwards follow the goods, or the proceeds thereof, into the hands of third persons, on the

ground of fraud. So, where a principal, with full knowledge of the fraud, perpetrated by his agent in the disposition of property purchased with his money, elects to prosecute the judgment for the money so misappropriated, he affirms the acts of his agents, and cannot afterwards pursue the property which he has elected to treat as that of his agent. Id. This principle is emphatically announced in Lloyd v. Brewster, 4 Paige, 537.

A party, who is entitled to rescind a contract for fraud, may deprive himself of this remedy by acquiescence; or, where the transaction is a sale of property, by his dealing with the property as owner after the discovery of the fraud. Schiffer v. Dietz, 83 N. Y. 300. A party, claiming to rescind a contract for fraud, must act promptly on discovery of the fraud, and restore, or offer to restore, to the other party what he has received under it. He cannot thereafter deal with the other party on the footing of an existing contract, or with the property acquired under it as his own. He has an election of legal remedies; to sue for damages, or to be reinstated in the position in which he was before the contract was consummated. These remedies are not, however, concurrent, but are inconsistent; and the adoption of one necessarily excludes the other, remedy. And when he has made an election, he must abide by it. Id.; Masson v. Bovet, ante; Cobb v. Hatfield, 46 N. Y. 533; Lawrence v. Dale, 3 John. Ch. 23.

In conformity with the general doctrine that a party cannot rescind while retaining the fruits of the contract, it has been frequently decided that a purchaser of real property must surrender possession acquired under the contract, before he can maintain an action for its rescission. Gale v. Nixon, 6 Cow. 445; More v. Smedburgh, 8 Paige, 600; Tompkins v. Hyatt, 28 N. Y. 347. Where fraud is claimed, continuance in possession, after discovery of the fraud. is evidence of an intent to abide by the contract.

In Wile v. Brownstein, ante, an action in replevin was brought and a part of the goods obtained. A discontinuance was afterward had, under § 1719 of the Code, as to those not found. A new action was then brought for the balance of the goods upon their original date and delivery. And it was held that the action could not be maintained.

In Wallace v. O'Gorman, ante, it was held that the bringing of an action in replevin by the vendor to recover possession of goods sold, on the ground that they were procured by fraud, is a disaffirmance of the sale, and bars a subsequent action to enforce an agreement, made contemporaneously with the sale, to give security for the purchase price. If, as is usually alleged in a replevin suit, the title to the goods never passes to the purchaser, the latter is not indebted to the seller for the purchase price of the goods, and there is nothing within the operation of the agreement claimed in Wallace v. O'Gorman, ante, to give a mortgage. If by reason of the replevin suit the sellers have rescinded the former contract of sale and have no cause of action on it for the price of any of the goods, as was held in the case of Wile v. Brownstein, then there is nothing for the mortgage' to secure. The agreement to sell, and the agreement to give a

mortgage, were part of one transaction.   The sellers cannot rescind a part and enforce the rest.   But if a mortgage had in fact been given, the question would perhaps be different.   But in this case the agreement to give the mortgage is executory and the mortgage cannot be compelled, unless there is something for it to secure, according to the terms of the agreement. In Roberts v. Ely, 45 Hun, 590, it was held that, when a party has ground, upon which to bring different actions arising out of the same state of facts against different persons, and the maintenance of one necessitates the allegation of a fact inconsistent with the maintenance of the other, the party, if he has brought one action and proceeded to judgment, is bound by his election, and cannot proceed against the others, even though the judgment which he has obtained fails to afford relief.

In Moller v. Tuska, *ante*, the plaintiff sold and delivered to the vendees a quantity of sugar.   The sale was induced by fraud on the part of the vendee who transferred the sugar to defendant, and then went into voluntary bankruptcy.   The present action was brought to recover possession of the goods on the ground of the fraud.   The complaint alleged that the defendant received possession with notice and was party to the fraud.   The plaintiffs, while the action was pending, proved a claim in bankruptcy against the vendee, as for goods sold, and received from the asignee a dividend thereon.   Subsequently the claim, by order of the register in bankruptcy, was expunged from the record.   The assignee, on the ground that the present action was a disaffirmance of the sale, demanded and received back the dividend.   It was held that the plaintiff had, on discovery of the fraud, an election of remedies either to disaffirm the sale and recover the property, or to sue for the price; that, having manifested his election by bringing this action, he could not thereafter revoke it, and maintain a claim under the contract of sale; that the subsequent transaction with the assignee in bankruptcy was no defense, both because the plaintiff had previously made his election and was bound by it, and because the assignee had no power to waive any advantage accruing to the estate by the election, or to create a debt where none existed, and could not, therefore, assent to a rescission of the election. And it was further held, in this case, that the proof and allowance of plaintiff's claim in bankruptcy was not such an adjudication as had the force of a judgment as upon contract.

It was held in Equitable Co-operative Foundry Co., v. Hersee, 103 N. Y. 25, that the mere bringing of an action for the price of goods sold, unless it is brought with knowledge of the fraud, is not a binding election or a waiver of the right to rescind the sale on the ground of such fraud.

An action by a vendor against a fraudulent vendee for the price of goods, if discontinued before judgment, does not prevent an action of trover against the purchaser.   Equitable Co-operatiev Foundry Co. v. Hersee, 33 Hun, 169.   Such action, being upon contract, would doubtless be conclusive evidence of an election to affirm the contract, if it had proceeded to

judgment, even though the judgment had been adverse to the plaintiff. Id.; Sanger *v.* Wood, *ante ;* Butler *v.* Miller, *ante.*

There are many cases where the fact of bringing suit to enforce one of two inconsistent remedies has been held an election, though the suit has not proceeded to judgment.   One of these classes is where the plaintiff has realized some benefit from the suit by means of a provisional remedy therein, or otherwise; as in Morris *v.* Rexford, *ante,* where, in replevin, the plaintiff obtained a re-delivery of his goods; or in Butler *v.* Hildreth, 5 Metc. 49, where the plaintiff secured his demand by an attachment of property.   Another class consists of actions against a sheriff for a voluntary escape, where, by the fact of such suit being brought, the prisoner may leave the jail liberties with impunity, and the sheriff cannot purge the escape by a recapture without the authority of the plaintiff.   Such are the cases of Brown *v.* Littlefield, *ante ;* Rawson *v.* Turner, 4 John. 469, and McElroy *v.* Mancius, *ante.*   In these cases the change worked by the bringing of the suit in the status of the prisoner and the sheriff is held to conclude the plaintiff from adopting any other remedy.   Whatever may be the rule in other cases, there can be no doubt that, when the ground taken in a suit is prejudicial to the other side by cutting off a good defense, or precluding a recovery on a valid cause of action, it will preclude the person who adopts it from subsequently shifting his ground to the injury of his opponent.   This principle applies wherever an attempt is made to gain an inequitable or unfair advantage by presenting the same matter in different and inconsistent aspects.

With the exception of the two classes of cases above mentioned, there is no decision holding that, in the case of a fraudulent purchase, the commencement of a suit upon the contract concludes the plaintiff from rescinding the contract and reclaiming the goods, where the action on the contract has been regularly and seasonably discontinued, before judgment.

But there are numerous cases in which expressions may be found to the effect that the bringing of a suit on the contract is a conclusive election of remedies; but, with the exceptions above stated, those cases refer to a suit not discontinued but existing in full force.   A suit on the contract begun one day and discontinued the next, cannot, with reason, be deemed a conclusive election of remedies, though the prior suit is not discontinued until after it is pleaded in the present action.   In the case of two successive suits on one and the same cause of action, a discontinuance of the first action, after it is pleaded in a second suit, is permissible, and such discontinuance will be a good reply to the plea of former suit in bar.   Beals *v.* Cameron, 3 How. 414; Avrill *v.* Patterson, 10 N. Y. 500.   Or it may be given in evidence in answer to the matter pleaded, where a reply is not permitted or required.

Where the purchase is fraudulent, and the judgment creditor of the fraudulent vendee has taken the property from the possession of the vendee without paying value for it, to hold that the prior action, although aban-

doned and regularly discontinued, is a bar to a recovery would be interposing a mere technicality to shield the defendant from a just liability, where the plaintiffs gained nothing by their former suit against the vendees. on the contract for the purchase of the goods, and neither the defendants in that suit, nor the defendant in this action lost anything by it, as it was discontinued before judgment.

In Peters *v.* Ballestier, 3 Pick. 495, the master of a vessel had exceeded the authority which had been given him to sell the cargo, and disposed of it in payment of an antecedent debt due by the owner to the vendee. An action of assumpsit was subsequently brought against the vendee by a party claiming as assignee of the bill of lading; but this action was discontinued, and an action of trover was resorted to in its stead. It was held that, as the action of assumpsit had not been proceeded with, but had been discontinued, it did not bar the plaintiff from maintaining the action for conversion. The decision in this case proceeded on the ground that the action of. assumpsit, brought in the first instance, had been misconceived, and could not have been sustained. The plaintiff's mistake in bringing assumpsit consisted in forgetting that by so doing he necessarily entitled the defendant to insist upon the contract as binding in his favor, as well as against him, and to show that all which it bound him to do had been performed.

There is no adjudication in this state antagonistic to the idea that the doctrine of a conclusive election of one of several remedies by personal action, rests upon an equitable estoppel. It is clear that the two classes. of cases already referred to rest upon this basis. In Goss *v.* Mather, 2 Lans. 283; affirmed 46 N. Y. 689, the plaintiff recovered judgment in his first action and collected it in part.

In Rodermund *v.* Clark, *ante*, a party, whose half interest in a vessel was. sold against his will, retained possession of the vessel after the sale, and it. was held that he could not sue for a conversion. Sanger *v.* Wood, *ante;* Littlefield *v.* Brown, *ante*. In the first of the last cited cases, the party had proceeded to judgment; the second was an action against the sheriff for an escape.

In Nichols *v.* Smith, 42 Barb. 381, the plaintiff had prosecuted his foreclosure suit to judgment.

In Bank of Beloit *v.* Beale, *ante*, the plaintiff had prosecuted his action, in which he affirmed the acts of his agent, and stress was laid upon that fact. In the case, Lloyd *v.* Brewster, *ante*, in which the like fact existed, was cited, and was made the basis of the decision; and the case of Morris. *v.* Rexford, *ante*, was also cited, where the plaintiff had replevied his goods.

In Wright *v.* Ritterman, 4. Robertson, 704; 1 Abb. N. S. 428, it was held that the pendency of an action on contract for goods sold and delivered will not prevent the bringing of an action for the conversion of the same goods; that the plaintiff may have two remedies in such a case, and an adjudication in an action brought to obtain either, whether for or against him, may

be a bar to the other remedy; but at any time previous to such an adjudication, he may discontinue the first, and proceed with the second, action.

The pith of the decision in Kinney *v.* Kiernan, *ante;* Moller *v.* Tuska, *ante;* Powers *v.* Benedict, *ante,* is, that after a contract of sale has been rightfully rescinded by the vendor on account of fraud on the part of the vendee, the contract is at an end, and no act on the part of the vendor alone can revive it. In each of the last two cases cited, it was held that the commencement of an action to recover the possession of the property, which had been prosecuted to the very judgment which the court had under review, was such a rescission.

There is a class of cases where an agent has purchased goods for an undisclosed principal by whom they were used, and it has been held that the vendor has his election to sue the principal or the agent. Equitable Foundry Co. *v.* Hersee, *ante;* Matllege *v.* Poole, *ante;* Nason *v.* Cockroft, 3 Duer, 366.

It seems reasonable that, where a person has two or more inconsistent remedies, the bare fact of his suing upon one, without thereby improving his own condition or injuriously affecting that of the defendants therein, or of any other party, and without securing any advantage by his suit, in case he discontinues it before judgment, should not prevent his resorting to any other remedy to which he was originally entitled. Equitable Foundry Co. *v.* Hersee, *ante.*

. In Hays *v.* Midas, 39 Hun, 460, the plaintiff, having been induced, by false and fraudulent representations of the defendant, to sell goods to him, commenced an action upon the contract of sale. He also procured therein an attachment against the goods, which was issued to the sheriff. The goods were at that time held under a number of prior attachments. Thereupon the plaintiff discontinued the action upon the contract, and commenced an action of replevin to recover the goods. And it was held that, in the absence of evidence showing that the plaintiff had knowledge of the fraud at the time of commencing the action upon the contract, the mere commencement of such action was not a final adoption of the contract and a waiver of the fraud. Even though the plaintiff, with knowledge of the fraud, has commenced his action on the contract, and subsequently discontinued it, it constitutes no bar to an action of replevin. There are two cases in the supreme court which hold that there is no bar, when an action is commenced, and regularly discontinued, upon the contract, before an action was brought to reclaim the property, as though the title has not passed by reason of the fraud inducing the sale. Johnson *v.* Frew, 33 Hun, 195; Equitable Foundry Co. *v.* Hersee, Id. 171. In Powers *v.* Benedict, *ante,* it was held that the bringing of an action to reclaim the goods was a bar, so far as the goods were taken under it. In Moller *v.* Tuska, *ante,* it was held that an action in replevin for goods obtained by fraud was not barred by a subsequent application to the bankruptcy court for a dividend on the purchase price of the goods. In Acer *v.* Hotchkiss, 97 Id.

395, it was held that, in that particular case, there could be no action upon a contract induced by fraud, after the party had foreclosed the mortgage, which was purchased by him under fraudulent representation. There must be a seizure of the goods under the attachment to render an action upon the contract illegal, or a judgment must be obtained on the contract, to bar the right to follow the goods as the property of the vendor, on the ground that there was no contract.

In Wallace v. O'Gorman *ante*, plaintiffs brought an action to establish and enforce an equitable mortgage upon certain real estate of one Murphy, the assignor of defendant. Murphy applied to plaintiffs for the purchase of goods on credit, and it was then agreed that plaintiffs would from time to time sell and deliver to Murphy goods as he should require in his business upon credit, and that, to secure the payment of the purchase price, Murphy would execute and deliver to the plaintiffs a mortgage on certain real estate. Plaintiffs in pursuance of this agreement sold and delivered Murphy goods to a large amount, for none of which payment had been made. Murphy upon demand failed to give the mortgage and made a general assignment to defendant. An action in replevin was commenced by plaintiff against defendant individually as holding the goods, and under the requisition the sheriff took possesion of part of the goods sold by plaintiff to Murphy. In the affidavit upon which the replevin action was founded it was stated that Murphy, by means of false and fraudulent representations as to his financial responsibility and otherwise, did wrongfully take and fraudulently obtain the goods from the possession of plaintiffs. The present action was subsequently commenced and the goods referred to in the complaint in this action are the same as were referred to in the replevin papers. The question is as to the effect of the pendency of the replevin suit upon the present action.

The authorities are very clear to sustain the proposition that a party, after disaffirming a contract of sale and bringing a suit in replevin for the goods, has no remedy on the contract of sale. Morris v. Rexford, *ante;* Bank v. Beale, *ante;* Rodermund v. Clark, *ante;* Kinney v. Kiernan, *ante;* Fields v. Bland, *ante;* Moller v. Tuska, *ante;* Powers v. Benedict, *ante;* Bowen v. Mandeville, *ante;* Wile v. Brownstein, *ante.*

In Moller v. Tuska, *ante*, it is said very pointedly, in regard to an action in replevin, that the plaintiffs have on discovery of the fraud an election of remedies,—that is, either to disaffirm the sale and recover the property or sue for the price,—and, having manifested their election by bringing an action to recover the property itself, could not thereafter revoke it and maintain a claim under the contract of sale.

Where the vendor of goods has elected to rescind the sale as fraudulent, by commencing a proceeding in a court of justice based upon such rescission, and the relief which he seeks is granted, there is no contract, while such judgment or decree remains in full force, that can be enforced after such an election. Crossman v. Universal Rubber Co. of New York, 57 Super.

459. In this case, plaintiffs filed a bill against the defendant in the court of chancery of New Jersey, alleging fraud in a sale of goods for which they had taken its notes repudiating the sale and offering to surrender the notes. A receiver of defendant's property was appointed in this proceeding. It was held that plaintiffs were bound by their election, at least from the time of the appointment of a receiver, and could not maintain an action on the notes.

There is no case that holds that, where a party, entitled to rescind a contract, has elected to rescind it and has, upon such election, enforced a remedy against the other contracting party, such election has not been binding. In Kinney *v.* Kiernan, *ante*, the court said that, after the plaintiff has made a valid election to avoid the sale, and has asserted his title to the goods by bringing an action, the contract of sale was at an end; and that in case the fraud is established, neither the purchasers nor their vendees, other than *bone fide* purchaser, can claim any title under the sale, and the right of action of the vendor against the purchasers upon the contract is gone. No subsequent act of the vendor alone can revive the contract, or the right of action thereon, which has thus been destroyed. And it was held in the case last cited that bringing an action against the purchasers on a contract, and the recovery of a judgment in that action, did not affect the right of the vendor in the action previously commenced for the conversion; and that such an action on contract could not debar the vendor from prosecuting his action for conversion, because the right of action did not exist at the time the action on contract was brought.

And in Moller *v.* Tuska, *ante*, the same principle was distinctly asserted. In that case, it was stated that the plaintiffs manifested their election by bringing their action. After that the other way of redress was not open to them. They cannot successfully assert the claim against the purchaser under the contract after their election to disaffirm it had been manifested, and to revoke it was not in their power.

In neither of the cases of Kinney *v.* Kiernan, and Moller *v.* Tuska *ante*, had the plaintiff obtained any benefit by the action brought in disaffirmance of the contract, but it was held that bringing such an action was of itself such a disaffirmance of the contract that the contract was at an end, and that no act of the plaintiff alone could revive it.

The effect of an action to recover the contract price of goods sold upon a subsequent action in disaffirmance of the contract, has been discussed in many cases, and it is difficult to reconcile all that has been said in them. In some of the cases, the decision is put upon the ground that the fraud was not known to the party seeking to rescind at the time the action was commenced on the contract. It has however, sometimes been held that the mere commencement of an action to recover the contract price, which has not resulted in any advantage to the defrauded party, and which was discontinued before the contract was sought to be rescinded, was not such an election as would prevent such a rescission. The case of Conrow *v.* Little,

*ante*, construes the cases of Foundry Co. *v.* Hersee, *ante*, and Hays *v.* Midas, *ante*, and holds that bringing an action on the contract, with a knowledge of the facts on which fraud is subsequently charged, is a definitive waiver of the right to proceed for fraud. But it has not been held in any case that an election to rescind, duly and deliberately exercised, could be recalled, and an action subsequently maintained on the contract.

In Conrow *v.* Little, 41 Hun, 395, the plaintiffs, upon discovering that the note received by them was a forgery, had previously brought an action in the superior court of New York against Branscome, in which an attachment was issued upon an affidavit charging him with having obtained their goods and money by fraud, and demanding damages. They afterwards ascertained that the defendants in the present action still held a portion of the goods sold by them to Branscom and thereupon discontinued the action in the superior court and brought the present action against the defendant to recover the goods in their possession. And it was held that the issuance of the attachment in the action in the superior court, and its discontinuance without the entry of a judgment, constituted no bar to this action.

In Conrow *v.* Little, *ante*, the plaintiffs agreed to manufacture for, and sell and deliver to, one Branscom, as he might direct, and to such parties as he should employ to print his book, such paper for printing purposes as he might require to the value of $7,000. Branscom fraudulently induced the plaintiffs to enter into their agreement by delivering to them as genuine a note of $7,000 which turned out to be forged. On learning this fact, plaintiffs commenced an action against Branscom for the recovery of the goods sold and delivered, alleging the fraud practised upon them to induce the sale of the goods. Subsequently they obtained an attachment in that suit against the property of Branscom, and it was levied upon money of Brancom on deposit in the bank. Later, part of the money so levied on was drawn from the bank by plaintiffs on Branscom's check, and applied on account of money theretofore loaned by them to him. Subsequently the attachment suit was discontinued, but in the meantime, the present action was begun. Defendant set up the attachment proceedings and asked for a dismissal of the complaint.

It was held that the contract between Branscom and the plaintiff was, upon the discovery of Branscom's fraud, voidable at their election. As to him the plaintiffs could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. That time was when they commenced an action for the sum due under the contract, and in the course of its prosecution applied for and obtained their attachment against the property of Branscom as their debtor. They then knew of the fraud practised by him, and only became entitled to a remedy by attachment, because it was made to appear that a cause of action existed in their favor by reason of a breach of contract to pay for goods obtained by fraud. The attachment was levied and the action pending, when the present action of replevin, which repudiates the contract and has no sup-

port except on the theory of its disaffirmance, was commenced.  The two remedies are inconsistent.  By one the whole estate of the debtor is pursued in a summary manner and payment of the debt sought to be enforced by execution; by the other specific articles are demanded as the property of the plaintiff.  One is to recover damages in respect to the breach of the contract, the other can be maintained only by showing that there was no contract.  After choosing between these modes of proceeding, the plaintiffs had no longer an option.  By bringing a first action, after knowledge of the fraud practiced upon them, the plaintiffs waived the right to disaffirm the contract, and the defendants may justly hold them to their election. The principle applied in Foundry Co. *v.* Hersee, *ante*, and Hays *v.* Midas, *ante*, require this construction, for the present contains the elements lacking in those cases, viz.: knowledge of the fraud practised by the vendee; and by reason of it the plaintiffs were put to their election.

The fact that the plaintiffs discontinued the first suit before bringing the present action to trial, is not at all material to the question, for it is the fact that they elected this remedy, and acted affirmatively upon that election, which determines the present issue.  Taking any step to enforce the contract, was a conclusive election not to rescind it on account of anything known at the time.  After that the option no longer existed, and it is of no consequence whether or not the plaintiffs made their choice effective.

The party to a contract, after the same is concluded, may have many reasons for believing that he has been imposed upon and cheated by the other party, and, at the same time, be ignorant of the particular fact or facts, upon which the charge of fraud could be sustained as a matter of law.  Underhill *v.* Rumsey, 50 Hun, 601.  It was held in the case of the Equitable Foundry Co. *v.* Hersee, *ante*, that the commencement of an action upon the contract, for the purpose of enforcing the same according to its terms, after the plaintiff has full knowledge that a fraud has been perpetrated by the defendant in procuring the contract, was not an election to waive the fraud, in case the action was discontinued or abandoned before judgment, and the plaintiff had derived no benefit or advantage by the commencement of the suit.  He is not estopped by the commencement of the action on the contract, from seeking to recover the goods on the ground that no title passed, by reason of the alleged fraud.  Underhill *v.* Rumsey, *ante*.